UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CHERYL SAGATAW and
DEANTHONY BARNES, *on behalf of
Themselves and a class of
similarly-situated individuals,*

        Plaintiffs,

vs.

MAYOR JACOB FREY, *in his
individual and official capacity*

        Defendant.

Case No. 24-CV-00001 (ECT-TNL)

**ANSWER TO COMPLAINT**

---

For his Answer to Plaintiffs' Complaint ("the Complaint"), Defendant Mayor Jacob Frey, in his individual and official capacity, (hereinafter "Mayor Frey" or "Defendant") states and alleges as follows:

Except as admitted, qualified or otherwise pleaded herein, Defendant denies each and every allegation, matter, and thing in Plaintiffs' Complaint.

Defendant states that the Complaint contains footnotes, exhibits, and declarations that are duplicative and are not susceptible to a responsive pleading. To the extent that the material in the footnotes, exhibits, and declarations can be construed to contain any allegations against Defendant, those allegations, if any, are denied.

## INTRODUCTION

The allegations in the narrative paragraphs appearing under the heading "Introduction" in the Complaint are not amenable to an admission or denial in a pleading.  Additionally, to the extent that the "Introduction" or other allegations in the Complaint use the term "evict" or "eviction" or "evicting" to imply that Plaintiffs had a legal right to stay or camp on public property, those allegations state a legal conclusion for which nor responsive pleading is required. To the extent a response is required, however, the allegations are denied.

In further response to Plaintiffs' "Introduction", Defendant affirmatively states that on August 24, 2023, the Minnesota Department of Transportation ("MNDot") cleared and closed an encampment on MNDot property known as the "Wall of Forgotten Natives." (Declaration of Enrique Velazquez ("Velazquez Decl.")[1], ¶ 2.) Immediately following this closure, several individuals from that site broke through a fence surrounding a City-owned lot located at 2313 13th Avenue South. *Id.* Within hours of unlawfully breaking into the fenced City-owned property, approximately 40 individuals set up tents and formed a new

[1] The Declaration of Enrique Velazquez and exhibits thereto, Director of the City of Minneapolis Department of Regulatory Services, is attached as Exhibit 1 to Defendant's Answer. Defendant hereby incorporates by reference this Declaration into Defendant's response to each of the numbered allegations in Plaintiffs' Complaint.

encampment. *Id.* This encampment ("the Encampment") is the subject of Plaintiffs' Complaint. By August 29, 2023, the size of the Encampment grew to approximately 70 individuals and shortly thereafter rose to over 100 individuals. *Id.* ¶ 3. Since mid-October 2023 to January 4, 2024, the size of the Encampment has oscillated between 100-150 individuals. *Id.*

The City's Homeless Response Team ("HRT") first visited the Encampment on August 24, 2023, the day of its inception. *Id.* ¶ 4. The City's HRT connects homeless individuals with Hennepin County for housing assessments and/or case management, service providers or assigned case workers, storage services in partnership with Downtown Improvement District, shelter services, medical attention through Healthcare for the Homeless, and transportation services to these and other resources. *Id.* ¶ 5. The City's HRT made no less than 15 separate visits to the Encampment with these offers of assistance. *Id* ¶ 6. On numerous occasions, the City's additional outreach partners, including Agate, Avivo, Hennepin County's Streets to Housing, and Healthcare for the Homeless, visited the Encampment to engage with the unsheltered individuals to provide services. *Id.* ¶ 7. Moreover, in connection with the Encampment, with the approval of Defendant Mayor Jacob Frey and the Minneapolis City Council, the City provided one-time funding to Helix Health and Housing Services ("Helix"), an organization

that provides housing, mental health services, and substance use treatment to underserved populations in collaboration with Red Lake Nation. *Id.* ¶ 8.

The City partnered with Helix for outreach to the Encampment, and with the assistance of Helix's outreach efforts, the City has supported 104 residents at the Encampment find housing or other shelter options. *Id.* In addition to providing connections to shelter options, the role of the City's HRT is to ensure that people are aware of free storage provided to homeless individuals through the City's contract with the Downtown Improvement District ("DID"), an arrangement championed by Defendant. *Id.* ¶ 9. Individuals can bring their personal property directly to DID for free, safe, and secure storage. *Id.* Alternatively, the City's HRT will bring DID bins to an encampment and transport them back to DID for storage. *Id.* DID will store individuals' personal property for an unlimited amount of time, provided that individuals using storage check in with DID once every 14 days. *Id.* The City's HRT has provided information about free property storage on every visit to the Encampment and continued to do so up until the date of the closure. *Id.* No one at the Encampment chose to use the free DID storage offered by the City's HRT. *Id.*

In addition to the over 15 visits to the Encampment by the City's HRT, the Director of the City's Community Planning and Economic Development Department and the Director of the City's Regulatory Service Department, with

4

the approval of Mayor Frey, also separately met with Encampment organizers on October 11, 2023, to evaluate the situation, observe conditions, and discuss closure. *Id*. ¶ 10. They discussed ways in which the City would provide assistance to minimize health concerns in advance of the closure. *Id.* For example, while the City historically does not provide portapotties at encampments, recognizing the volume of people present at the Encampment and livability impacts for the surrounding community, City staff worked to add portapotties as part of its plan to effect a healthy closure of the Encampment. *Id* ¶ 11. Identifying a willing vendor was challenging, as vendors have been harassed and assaulted when servicing or removing portapotties in other encampments, and portapotties are regularly vandalized and service vehicles damaged when engaging in encampment response work. *Id*. ¶ 12. Nonetheless, the City was able to secure four portapotties placed immediately outside of the Encampment, including an accessible portapotty for residents with limited mobility. *Id*. ¶ 13. In the weeks prior to closure, the Encampment portapotties were serviced six days per week. *Id.*

Additionally, in an effort to improve conditions as the parties worked towards a collaborative closure, the City increased the frequency with which the City contractor removed rubbish from outside the encampment from once to twice a week. *Id*. ¶ 14. The City's Public Works department eventually took over

collection, placed refuse containers on site and began servicing the area five times per week. *Id.*

In spite of the efforts by the City and Defendant Mayor Frey to minimize health and safety risks as the parties moved towards a closure of the Encampment, dangerous criminal activity continued to increase. In general, encampments pose risks to not only those living in an encampment, but the community at large, and the Encampment was no exception. *Id.* ¶ 15. During its existence, there were more than one hundred 911 calls to Minneapolis Police and Fire Departments relating to the Encampment. *Id.* ¶ 16. The calls related to illegal activity at the Encampment including, but not limited to, death threats amongst campers, assaults, gunshots, stolen vehicles, vandalism and property damage, drug overdoses, and fires. *Id.*

In October 2023, there were two notably tragic incidents at the Encampment—one that involved the death of a baby, and one that involved the drug overdose death of an individual at the Encampment. *Id.* ¶ 17. Shortly thereafter, on November 1, 2023, leaders from the Metropolitan Urban Indian Directors ("MUID") reached out to City Staff and Mayor Frey demanding that the Encampment be closed immediately, citing concerns not only about the recent deaths and other crimes, but about concerns that criminal activity was being hidden from law enforcement due to threats and physical violence inflicted on those reporting. *Id.* ¶ 18, Ex. A. According to the MUID, neighbors witnessed

women and girls being dragged from the Encampment into cars in the middle of the night, open drug use and sex acts throughout the day. *Id.* On December 12, 2023, a 45-year-old man was killed at the Encampment after being shot six times. *Id.* ¶ 19.

Due to escalating violence and safety concerns, the Encampment was set for closure on December 14, 2023, and notice of the closure was posted on December 7, 2023. *Id.* ¶ 20. However, Mayor Frey determined that a short delay was appropriate to give those remaining at the Encampment additional time to access shelter and services. *Id.* ¶ 21. Accordingly, a new closure date was set for December 19, 2023. *Id.* During this time between December 7 and December 19, the City's HRT team made numerous visits to the Encampment, offering connection to shelter and services, as well as providing free storage options. *Id.* ¶ 22.

On December 14, 2023, members of the Minneapolis City Council and Mayor Frey's office, along with County Commissioners, state legislators, and services providers met with Encampment leaders. *Id.* ¶ 23. There was broad agreement that the Encampment needed to close, but City leadership agreed to another extension to provide even more time for access to services and shelter. *Id.* At that meeting, Encampment organizers asked that residents of the encampment be moved to a temporary, 24/7, indoor facility. *Id.* The City actively worked to vet that request along with the County, State, and several experienced social service

providers. *Id.* Four experienced and trusted service providers who were capable of providing this level of support were identified: Agate Housing and Services, American Indian Community Development Corporation, Avivo, and Simpson Housing Services. *Id.* After several discussions, all four providers said they could not take on the role of managing such a project. *Id.* Capacity, resources (financial and human capital), and other competing priorities were given as primary reasons for this decision. *Id.* However, these providers said they had the collective capacity to provide supportive housing to approximately 45 to 60 individuals, including offering residents mental health and substance use disorder services. Additionally, with help from Hennepin County and the State of Minnesota, Salvation Army and Rescue Now made plans to add 90 beds to the shelter system the week of January 1, 2024. Hennepin Shelter Hotline, in partnership with the Adult Shelter Connect, also made plans to help people access these additional beds as well as beds that became available in existing shelters. *Id.* Accordingly, closure of the Encampment was rescheduled for January 4, 2024. *Id.*

Notice of the Encampment closure was posted on December 29, 2023, six days in advance of the closure. *Id.* ¶ 24. Hennepin County service providers represented to the City that they have engaged with everyone at the Encampment. *Id.* ¶ 25. During the time between December 14, 2023, up to the closure, City staff spent hundreds of collective hours preparing for the closure, allocating resources,

designating staff, and assuring that all available resources had been repeatedly made available to those at the Encampment, and that shelter was available for all Encampment individuals. *Id.* ¶ 26.

The City conducts encampment closures in accordance with a set of operational guidelines. *Id*. ¶ 27. Prior to an encampment closure, notice is posted at least 72 hours in advance. *Id.* ¶ 28. It is undisputed that in the case at hand, notice was posted, again, 6 days prior to the closure date. *Id.* ¶ 24.

On January 4, 2024, the Encampment closed as scheduled. On the day of the Encampment closure, representatives from multiple departments were on site. *Id.* ¶ 29. Staff from the City of Minneapolis Department of Regulatory Services and Department of Community Planning and Economic Development were present. Minneapolis Public Works was present to assist with cleaning the site. *Id.* Minneapolis Police Department officers were on site to support the other City staff and ensure that homeless individuals, the community, and City staff were safe throughout the duration of the closure. *Id.*  On the day of the closure, City staff waited by as those in the Encampment conducted a morning ceremony, held a lengthy press conference, and packed all of their belongings for transport off of the site. The closure was peaceful, and there have been no claims that any individual lost property at the closure. *Id.*

Now that the Encampment is closed, pre-development activity for a new community center will be able to start. (Velazquez Decl. ¶ 30.) The Indigenous Peoples Task Force ("IPTF") has a redevelopment agreement with the City to construct the Mikwanedun Audisookon Art and Wellness Center on the site of the Encampment. *Id.* According to IPTF, pre-development work is necessary in advance of the purchase to make it possible to break ground shortly after purchase, which is currently set for February 2024. *Id.* When finalized, the site will include IPTF office and clinic space, a commercial kitchen, community garden, small theater, art workshop and gallery, and space to support neighborhood partnerships and entrepreneurship and employment training. *Id.*

## JURISDICTION

1.      In response to ¶ 1 of the Complaint, Defendant admits that Plaintiffs purport to bring the stated claims.  Denies the claims have merit.

2.      In response to ¶ 2 of the Complaint, the allegations state a legal conclusion to which no response is required.  To the extent a response is required, denied.

## PARTIES

### *Representative Plaintiff Cheryl Sagataw*

3.      States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 3 of the Complaint, and, therefore, denies the same.

4.      States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 4 of the Complaint, and, therefore, denies the same.

5.      States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 5 of the Complaint, and, therefore, denies the same. Defendant affirmatively states that the "area under Interstate 94" and the "Wall of Forgotten Natives" is property that is not owned or operated by the City of Minneapolis and not under the direction or control of Defendant.

6.      Denies that the Encampment was a safe place for Plaintiff to stay. States that Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in ¶ 6 of the Complaint, and, therefore, denies the same.

7.      Denies the allegations in ¶ 7 of the Complaint.

### *Representative Plaintiff DeAnthony Barnes*

8.      Admits that ¶ 8 of the Complaint references what Plaintiff Barnes describes in his declaration, but denies any implication that the Encampment offered adequate access to heat or the best connection to permanent housing.

States that Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in ¶ 8 of the Complaint, and, therefore, denies the same.

9.      States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 9 of the Complaint, and, therefore, denies the same. Affirmatively states that the Encampment was the site of significant criminal and violent activity, including murder, assault, human trafficking and drug use.

10.     Denies that Defendant was involved in any prior "evictions" of Plaintiff and denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 10.   States that Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in ¶ 10 of the Complaint, and, therefore, denies the same.

11.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 11 of the Complaint regarding Plaintiff's fears, and, therefore, denies the same. Denies the fears of Plaintiff Barnes stated in ¶ 11 of the Complaint have any factual foundation. Affirmatively states that the Encampment was closed on January 4, 2024, and upon information and belief, Plaintiff did not lose any property or belongings.

12.     Admits that ¶ 12 of the Complaint references what Plaintiff Barnes describes in his declaration.  Denies the allegations in ¶ 12 of the Complaint have merit.

### Represented Class Plaintiffs

13.     Admits that Plaintiffs seek to bring this action as a purported class action.  Deny that Plaintiffs are entitled to class certification. State that Defendant lacks sufficient information to form a belief as to the truth the allegation that unidentified individuals in the purported class are unhoused. Deny the remaining allegations in ¶ 13 of the Complaint.

14.     Denies the allegations in ¶ 14 of the Complaint.

15.     Upon information and belief, Defendant admits the allegations in ¶ 15 of the Complaint, and, therefore, affirmatively states that Plaintiffs are not appropriate class representatives..

16.     Denies the allegations in ¶ 16 of the Complaint.

17.     Admits that at the time of the filing of the Complaint, Plaintiffs sought to enjoin the closure of the encampment. Affirmatively states that on January 4, 2024, the Encampment was closed.

### Defendant Mayor Jacob Frey

18.     As to the first sentence of ¶ 18, admits the Plaintiffs purport to sue Defendant in his official and individual capacity. Admits the allegations in the second and third sentence of ¶ 18. The remaining allegations in ¶ 18 constitute a legal conclusion to which no responsive pleading is required.

19.     Admit that ending homelessness was an important part of Defendant's campaign for Mayor. Affirmatively states that ending homeless in Minneapolis continues to be a priority of Defendant. Deny the remaining allegations in ¶ 19 of the Complaint.

## CLASS QUALIFICATIONS FOR CERTIFICATION

20.     As to the allegations in ¶ 20 of the Complaint, admits that Plaintiffs seek to bring this action as a purported class action.  Deny that this case is suitable for class certification and denies that Plaintiffs are suitable class representatives.

### *Class Formation*

21.     Denies that this case meets the requirements for class certifications. The remaining allegations in ¶ 21 constitute a legal conclusion and citation to which no responsive pleading is required.

22.     Denies the allegations in ¶ 22 of the Complaint.

23.     Denies the allegations in ¶ 23 of the Complaint.

24.     Denies the allegations in ¶ 24 of the Complaint.

25.     Denies the allegations in ¶ 25 of the Complaint.

### *Type of Action*

The allegations in the narrative paragraph appearing under the heading "Type of Action" in the Complaint are not amenable to an admission or denial in a pleading.  To the extent a response is required, the allegations are denied.

## FACTUAL BACKGROUND

26.     States that Defendant lacks sufficient information to form a belief as to the truth the allegations in the first sentence of ¶ 26. Denies the remaining allegations in ¶ 26 of the Complaint.

27.     Denies that Defendant has engaged in "systemic and genocidal" displacement. States that the remaining allegations in ¶ 27 of the Complaint do not pertain to Defendant and that, therefore, no response is required.

28.     States that the allegations in ¶ 28 of the Complaint do not pertain to Defendant and that, therefore, no response is required.

29.     States that the allegations in ¶ 29 of the Complaint do not pertain to Defendant and that, therefore, no response is required.

30.     Denies that there is an ongoing attempt to rid Minneapolis of Indigenous individuals.  States that the property at-issue is subject to sale to the Indigenous Peoples Task Force.  States that the remaining allegations in ¶ 30 of the Complaint do not pertain to Defendant and that, therefore, no response is required.

31.     Denies the allegations in ¶ 31 of the Complaint.

32.     Denies the allegations in ¶ 32 of the Complaint.

33.     Plaintiffs' allegation that Defendant "played a muted role" is too vague to allow for a responsive pleading. Admits that the Minneapolis "city government" under the direction of Defendant has spent extensive time, resources and funds providing access to temporary shelter and permanent housing options for the unhoused. As to the remaining allegations in ¶ 33 of the Complaint, Defendant lacks sufficient information to form a belief as to the truth the allegations and, therefore, denies the remaining allegations.

34.     Admits that Defendant was concerned about the serious public health and human safety risks associated with the encampment at Powderhorn Park in 2020. Denies the remaining allegations in ¶ 34 of the Complaint.

35.     Denies the allegations in ¶ 35 of the Complaint.

36.     Admits that the Powderhorn Park encampment was closed by the Minneapolis Parks and Recreation Board and the Minneapolis Park Police Department, neither of which are under the direction or control of Defendant. Denies the remaining allegations in ¶ 36 of the Complaint.

37.     As to the allegations regarding the description or experience of Plaintiffs Sagataw and Barnes, Defendant lacks sufficient information to form a

belief as to the truth of the allegations and they are denied.  Denies the remaining allegations in ¶ 37 of the Complaint.

38.     Denies the allegations in ¶ 38 of the Complaint.

39.     Denies the allegations in ¶ 39 of the Complaint.

40.     Denies the allegations in ¶ 40 of the Complaint.

41.     Admits that ending homelessness was part of Defendant's mayoral campaign. Denies the remaining allegations in ¶ 41 of the Complaint.

42.     As to the allegations in ¶ 42 of the Complaint, Defendant lacks sufficient information to form a belief as to the truth the allegations, they are therefore denied.

43.     Defendant admits that local housing resources exist.  As to the remaining allegations in ¶ 43 of the Complaint, Defendant lacks sufficient information to form a belief as to the truth the allegations, they are therefore denied.

44.     Admits that 90 new shelter beds were made available on January 1 and 2, 2024. Denies the remaining allegations in ¶ 44 of the Complaint.

45.     Denies the allegations in ¶ 45 of the Complaint.

46.     Denies the allegations in ¶ 46 of the Complaint.

47.     As to the allegations in ¶ 47 of the Complaint, admits that notice was given that the Encampment would be closed on December 14, 2023, due to extreme

health and safety concerns, including multiple deaths and over one hundred 911 calls. Admits that the December 14 date was postponed to allow those remaining at the Encampment additional time to access shelter and services. Affirmatively states that a new closure date was set for December 19, 2023. Affirmatively states that during this time between December 7 and December 19, the City's homeless response team made numerous visits to the Encampment, offering connection to shelter and services, as well as providing free storage options. Affirmatively states that the December 19 closure date was moved to January 4, 2024, to allow more time for additional shelter beds to become available. Admits that on December 29, 2023, the Encampment was noticed for closure on January 4, 2024. Affirmatively states that the Encampment was closed on January 4, 2024. Denies any remaining allegations in ¶ 47 of the Complaint.

48.     Denies the allegations in ¶ 48 of the Complaint.

49.     As to the allegations in ¶ 49 of the Complaint, admits that there was a meeting between organizers, some City council members, and others from the City of Minneapolis enterprise. States that Defendant lacks sufficient information to form a belief as to the truth the allegations regarding who was invited. Admits that Defendant was unable to attend the meeting in person but affirmatively states that he sent a representative from his office to attend the meeting.

50.     Denies the allegations in ¶ 50 of the Complaint.

18

51.     Denies the allegations in ¶ 51 of the Complaint.

52.     Denies the allegations in ¶ 52 of the Complaint.

53.     Denies the allegations in ¶ 53 of the Complaint.

54.     As to the allegations in ¶ 54 of the Complaint, states that Defendant lacks sufficient information to form a belief as to the truth the allegations regarding whether putative class member Plaintiffs are "disabled, elderly, or otherwise particularly vulnerable to the elements and limited in their mobility." Denies the remaining allegations in ¶ 54 of the Complaint.

55.     Denies the allegations in ¶ 55 of the Complaint

## CAUSE OF ACTION

## COUNT I:

**Unlawful Seizure & Destruction of Plaintiffs' Property in Violation of the Fourth Amendment of the United States Constitution and Article I, Section 10 of the Minnesota Constitution**

56.     Defendant repeats all prior responses.

57.     The allegations in  ¶57 state a legal conclusion to which no response is required.

58.     The allegations in ¶ 58 state a legal conclusion to which no response is required.

59.     Denies the allegations in ¶ 59 of the Complaint.

60.     Denies the allegations in ¶ 60 of the Complaint.

61.    Denies the allegations in ¶ 61 of the Complaint.

## COUNT II

**Procedural Due Process Violations Under the Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the Minnesota Constitution**

62.    Defendant repeats all prior responses

63.    The allegations in  ¶63 state a legal conclusion to which no

response is required.

64.    Denies the allegations in ¶ 64 of the Complaint.

65.    Denies the allegations in ¶ 65 of the Complaint.

66.    Denies the allegations in ¶ 66 of the Complaint.

## COUNT III

**State-Created Danger in Violation of the Right to Substantive Due Process Under the Fourteenth Amendment of the United States Constitution and the Minnesota Constitution**

67.    Defendant repeats all prior responses.

68.    Denies the allegations in ¶ 68 of the Complaint.

69.    Denies the allegations in ¶ 69 of the Complaint.

70.    Denies the allegations in ¶ 70 of the Complaint.

71.    Denies the allegations in ¶ 71 of the Complaint.

72.    Denies the allegations in ¶ 72 of the Complaint.

73.    Denies the allegations in ¶ 73 of the Complaint.

## COUNT IV:

### Violation of the Eight Amendment to the US Constitution

74.    Defendant repeats all prior responses

75.    The allegations in ¶ 75 state a legal conclusion to which no response

is required.

76.    The allegations in ¶ 76 state a legal conclusion to which no response

is required.

77.    Denies the allegations in ¶ 77 of the Complaint.

78.    Denies the allegations in ¶ 78 of the Complaint.

79.    Denies the allegations in ¶ 79 of the Complaint.

## COUNT V:

### Conversion in Violation of Minnesota Common Law

80.    Defendant repeats all prior responses.

81.    Denies the allegations in ¶ 81 of the Complaint.

82.    Denies the allegations in ¶ 82 of the Complaint.

### DECLARATORY RELIEF

83.    Defendant repeats all prior responses.

84.    Denies the allegations in ¶ 84 of the Complaint. Affirmatively states

that the Encampment closed on January 4, 2024.

### PRAYER FOR RELIEF

Plaintiffs' "prayer for relief" is not amenable to an admission or denial in a pleading. To the extent a response is required, denied.

## JURY DEMAND

Defendant acknowledges that Plaintiffs demand a trial by jury, Defendant also demands a trial by jury.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    The actions upon which the Complaint is made were privileged, were commanded or authorized by law, and were done in a reasonable and lawful manner under the circumstances, such that the Defendant is immune from liability.

3.    Defendant or any City employee acting on Defendant's behalf is entitled to qualified immunity, official immunity, and/or statutory immunity from liability.

4.    Defendant is entitled to immunity under Minn. Stat. § 466.03.

5.    Defendant's liability is limited by Minn. Stat. § 466.04.

7.    Defendant denies that Plaintiffs have any right to attorney's fees in this action.

8.    Plaintiffs have failed to avoid or mitigate the alleged detriment or damages.

9.      Plaintiffs have failed to exhaust administrative remedies.

10.     Plaintiffs' claims are moot.

11.     Plaintiffs lack standing.

12.     Defendant denies that Plaintiffs have sustained any damages.

WHEREFORE, Defendant prays for an Order of this Court as follows:

1.      Dismissing the allegations and Counts in Plaintiffs' Complaint on the merits

        and with prejudice;

2.      Awarding the Defendant all reasonable costs, disbursements, and attorneys'

        fees to the fullest extent allowed by law; and

3.      For such other and further relief as this Court deems appropriate.


Dated:  January 23, 2024                KRISTYN ANDERSON
                                        City Attorney
                                        By */s Sharda Enslin*
                                        SHARDA ENSLIN (#389370)
                                        KRISTIN R. SARFF (#388003)
                                        HEATHER P. ROBERTSON (#390470)
                                        J. HAYNES HANSEN (#399102)
                                        Assistant City Attorneys
                                        Minneapolis City Attorney's Office
                                        350 South Fifth Street, Room 210
                                        Minneapolis, MN 55415
                                        (612) 673-2180
                                        (612) 673-3919
                                        (612) 673-3949
                                        (612) 673-3339
                                        sharda.enslin@minneapolismn.gov
                                        kristin.sarff@minneapolismn.gov
                                        heather.robertson@minneapolismn.gov
                                        haynes.hansen@minneapolismn.gov

*Attorneys for Defendant Mayor Jacob Frey*