

# Operational Guidance

## Encampment Response on City-owned Properties

December 16, 2022



December 2022

(This Page Intentionally Left Blank)

# Table of Contents

Purpose ................................................................................................................................................ 5
Guiding Principles ................................................................................................................................ 5
City of Minneapolis Homeless Response Team ................................................................................... 5
Data ...................................................................................................................................................... 6
    Criteria for Encampment Closure on City-Owned Property ........................................................ 6
    Multi-Departmental City Review Team ....................................................................................... 6
Posting of Notice and Exceptions ........................................................................................................ 6
Between Posting of Notice and Closure .............................................................................................. 7
Encampment Closure on City Property in Minneapolis ....................................................................... 7
Post Encampment Closure ................................................................................................................... 8
Appendices ........................................................................................................................................... 9
    Appendix A: Definitions ............................................................................................................... 9
    Appendix B: Minneapolis Code of Ordinances ......................................................................... 10
        225.10 Dumping in streets, public places prohibited ......................................................... 10
        244.60 Temporary housing prohibited ............................................................................... 11
        385.65 Interference with pedestrian or vehicular traffic .................................................. 11
        427.30 Obstruction, encroachments and littering generally ............................................. 12
        427.40 Depositing injurious matter on highways or adjacent ........................................... 12
        466.240 Assemblies obstructing pedestrian or vehicular traffic ....................................... 12

*Version History*

| Date | Document Version | Version Details | Owner/Editor |
|---|---|---|---|
| 12/16/2022 | 1.0 | Original | Christina Dowling |

## Purpose

Through a collaborative cross-departmental and multi-agency effort, the City of Minneapolis addresses encampments by sharing information that connects unsheltered individuals to resources, services, and shelter.

This document describes the principles and procedures for City staff's work to address encampments on City-owned properties in a manner that preserves and promotes the health and safety of unsheltered individuals and the surrounding community.

This is a working document that will be refined over time.

## Guiding Principles

The City's approach to responding to persons experiencing unsheltered homelessness is founded on the following principles:

- Everyone experiencing unsheltered homelessness is vulnerable and deserves dignified and respectful treatment protective of their rights
- Every effort must be made to connect people to housing, shelter and services
- Encampments represent a serious public health and safety risk – particularly for those staying within the encampment – and do not represent a dignified form of shelter

## City of Minneapolis Homeless Response Team

The City's Homeless Response Team (HRT) aims to proactively respond to the needs of unsheltered individuals in Minneapolis, concentrating specifically on individuals in the encampments. The HRT is part of the City's Regulatory Services department.

The HRT is not a direct service provider. The HRT can refer individuals to Hennepin County or a contracted service provider who can provide these services.

With every interaction, the HRT focuses on consistently engaging with unsheltered individuals to build relationships and trust. The team recognizes there is no *one size fits all* approach and meets people where they are by offering a variety of resources and services, that include shelter and storage options.

HRT is the first point of contact when the City receives complaints regarding an encampment. Upon receipt of a complaint, HRT performs research on property ownership before doing their first site visit. This information helps guide productive communication with the property owner on next steps and ownership responsibility. HRT visits the site and focuses on connecting unsheltered individuals to resources and services, including but not limited to:

- Hennepin County for housing assessments and/or case management
- Service providers or assigned case workers
- Storage services in partnership with Downtown Improvement District
- Shelter services
- Medical attention through Healthcare for the Homeless
- Transportation services to these and other resources

HRT works closely with the Hennepin County Streets to Housing Team and contracted community partners to ensure that all unsheltered individuals are engaged and offered services that align with their goals.

## Data

The City will track encampment locations, number of individuals present using point-in-time counts during site visits, and conditions while ensuring the HRT is connecting people to services.

## Criteria for Encampment Closure on City-Owned Property

Encampments are prohibited by City ordinance and all encampments in Minneapolis will be closed. Because encampments pose health and safety risks, the City makes an objective assessment of encampment conditions based on the following risk factors:

- Community livability impact—including, but not limited to, the geographic size, number of unsheltered individuals, proximity to schools, parks, businesses, and residents, and 911/311 calls for service volume.
- Health impact—including, but not limited to, presence of pregnant individuals, minors, hygiene, and environmental conditions, and other conditions at encampment sites that increase the health risks of individuals at the encampment or in the community.
- Life-Safety impact—including, but not limited to, unstable structures, weather conditions, drug use, violence, propane tanks, and illegal activity.
- External impact—including, but not limited to, accounts from neighbors and business owners, and imminent development, demolition, or renovation.

After reviewing these findings, City staff determines next steps, up to and including encampment closure. If an encampment poses an imminent risk, the City may prioritize the closure of a site.

## Multi-Departmental City Review Team

Because encampments impact multiple departments at the City, at the direction of the Mayor, a cross-department team was formed. This team reviews data, health, safety, and community impacts and makes recommendations for the closure of encampments. The cross-departmental City team includes staff representing both the Office of Public Service and the Office of Community Safety, represented by Regulatory Services, Community Planning and Economic Development, Public Works, Minneapolis Fire Department, Minneapolis Police Department, Minneapolis Department of Health, as well as other departments on an as-needed basis. The cross-departmental team meets weekly for a coordinated response to unsheltered homelessness.

## Posting of Notice and Exceptions

An Initial Notice of Trespass, Notice to Vacate, and a Notice of the closure date shall be posted by City at the site at least 72 hours prior to a closure. However, less than 72 hours of notice may be provided, if any of the following conditions exist:

- The encampment poses imminent community safety risks;
- There have been threats to City employees relating to the encampment in particular or the closure of encampments in general;

- The encampment has experienced an increase in violence or other illegal activities;
- The encampment is inhibiting or interfering with the normal operation of a business, school, daycare, or sober living facility;
- If law enforcement agencies are currently engaged in investigations in response to credible information and the 72-hour notice would put the investigation at risk; or
- Any other condition that poses an imminent danger to human life or safety.

If the encampment closure date is changed or delayed beyond the posted time in the initial notice and must be rescheduled, the City will strive to update the notice at least 48 hours in advance of the new closure date. If an updated notice cannot be posted at least 48 hours in advance, the notice shall be posted as soon as is reasonably possible. The City will make reasonable effort to share this information verbally with anyone at the site and with its contracted community partners to ensure those who are unable to read or have difficulty comprehending the information are made aware of the impending action.

## Between Posting of Notice and Closure

HRT will continue visiting sites and engaging with unsheltered individuals to offer services, resources, transportation to shelters, and storage for personal property in advance of a site closure. It is the City's goal to offer storage options at least once during the 72-hour notice window.

Prior to a closure, it is the goal of the City to inform its contracted community partners of the closure to enable them to perform targeted outreach and for them to stay connected to the unsheltered individuals they are assisting.

The City will work with Hennepin County, shelter staff, and contracted community partners to identify shelter resources leading up to the day of a closing and ensure that these resources are shared with unsheltered individuals.

## Encampment Closure on City Property in Minneapolis

For every encampment closure the cross-departmental team listed above reviews the size and scope, then determines resource needs and allocations based on the health, safety, and community livability impact. Each department plays a role:

- Minneapolis Health Department: needle pick-up.
- Minneapolis Police: When necessary, secure the perimeter of the encampment and supports other City staff during the closure to ensure unsheltered individuals, the community, and City staff are safe.
- Minneapolis Traffic Control: Direct traffic away from the site and ensures expeditious traffic flow and allow access for clean-up equipment.
- Minneapolis Community Planning and Economic Development and/or Minneapolis Public Works (Representative of City as property owner): Informs individuals on site that they are trespassing and need to leave the property immediately.
- Minneapolis Public Works—Solid Waste & Recycling: Cleans the site.

To the extent possible, on the day of the closure, the City will have either the HRT or contracted community partners available on site and/or virtually to support unsheltered individuals. The City's goal

is to schedule the timing of closure when the Adult Shelter Connect and other contract partners resources are open and available.

## Post Encampment Closure

After an encampment has been closed, City staff will notify all applicable City departments, applicable Hennepin County departments, and contracted community partners. The HRT will visit the site after closure to ensure the property is not reoccupied. If applicable, the property will be fenced to ensure no reoccupation.

Immediately following the closure of a site, the City's cross-departmental team will hold a post-incident debrief to discuss lessons learned and implement any improvements to the process.

# Appendices

## Appendix A: Definitions

**City:** When referring to the City of Minneapolis Enterprise – the government entity.

**Contracted community partners:** Entities who provide direct services and resources to unsheltered individuals. City contracts are in collaboration with Hennepin County.

**Encampment:** A grouping of tents, tent-like structure(s), or temporary structures that are located within Minneapolis, which appear to be occupied by individual(s) for the purposes of residing therein.

**Encampment Closure Team:** Multidepartment organized effort comprised of City of Minneapolis staff that work together to review data, health, safety, and neighborhood impacts to help make recommendations to close, clean and clear a site.

**Homeless Response Team (HRT):** A team of City of Minneapolis staff that humanely addresses encampments and actively engages with unsheltered individuals by building trust and a relationship and providing access to services and resources.

**Minneapolis:** When referring to the geography of the city.

**Notice of Trespass:** Notice that is posted by the property owner at encampment sites to inform the unsheltered individuals that they are trespassing.

**Notice to Vacate:** Notice that is posted by the property owner at encampment sites to inform the unsheltered individuals that they must vacate the premises.

**Property owner:** Owner or taxpayer of the subject property that will trespass individuals from their property. This may include but not limited to, private owner(s), City of Minneapolis, Hennepin County, Metro Transit, Minneapolis Park and Recreation Board, Minnesota Department of Transportation, and could be multijurisdictional.

**Temporary shelter:** Any tent, trailer or other structure used for human shelter which is designed to be transportable, and which is not permanently attached to the ground or to another structure.

**Trespass:** Individuals occupying private property without the owner's permission. Property includes sites owned by private owner(s), City of Minneapolis, Hennepin County, Metro Transit, Minneapolis Parks and Recreation Board, Minnesota Department of Transportation and could be multijurisdictional.

## Appendix B: Minneapolis Code of Ordinances

### 225.10 Dumping in streets, public places prohibited

(a) No person shall leave, place, throw or deposit, or cause or permit any other person to leave, place, throw or deposit, in or upon any street or public place, or in or upon any vacant or private lot or premises, any of the following: solid waste; building debris; toxic or hazardous waste; human excreta, sewage, or other water-carried waste; or other like or similar substances or materials.

(b) No person shall leave, place, throw, or deposit, or cause or permit any other person to leave, place, throw, or deposit, any substances or materials of any kind at a city solid waste collection point (SWCP), as defined by section 225.670 of this Code, for city disposal when the substances or materials were generated at a location other than the residence at whose SWCP the substances or materials were left, placed, thrown, or deposited for city disposal. Further, no person shall leave, place, throw, or deposit, or cause or permit any other person to leave, place, throw, or deposit, any substances or materials of any kind in a mobile refuse container (MRC), as defined in section 225.680 of this Code, for city disposal when the substances or materials were generated at a location other than the residence at which the substances or materials were left, placed, thrown or deposited for city disposal, whether or not the MRC is located at the SWCP at the time the substances or materials were left, placed, thrown or deposited in the MRC for city disposal. All waste disposed of in these MRCS shall meet all current federal, state, and local disposal laws and regulations.

(c) No person shall leave, place, throw, or deposit, or cause or permit any other person to leave, place, throw, or deposit, materials of any kind in a solid waste, recycling, or construction dumpster or similar type container without permission of the owner, lessee, or their authorized designee.

(d) No person shall leave, place, throw, or deposit, or cause or permit any other person to leave, place, throw, or deposit, any yard waste, as defined in section 225.05, on any property not owned, controlled, or operated by that person, or without the permission of the owner, lessee, or their authorized designee.

(e) No person shall leave, place, throw, or deposit, or cause or permit any other person to leave, place, throw, or deposit, any used furniture, used clothing, used appliances, or other household items on the property of a charitable, fraternal, religious, cooperative, communal, or similar organization during times that the principal facility or building located on such property is closed.

Any used furniture, used clothing, used appliances or other household items that are left, placed, thrown or deposited at such organization shall be placed in an area designated by the organization. This area must comply with all state and local laws. Any such area must be capable of being secured by such an organization while the facility or building is closed so as to reasonably prevent unauthorized placement or deposit of such items or disturbance of items which have already been placed in the area.

(f) If a motor vehicle is used to aid, assist, or accomplish a violation of any part of this section, the owner of the vehicle, or the lessee of a leased vehicle, shall be in violation of this section and be subject to a fine not to exceed two hundred dollars ($200.00).

(1) The owner or lessee is not subject to the fine under subsection (f) under the following circumstances:

a. Another person has been convicted for that violation;

b. The owner or lessee can demonstrate the vehicle was stolen at the time of the violation; or

c. The lessor kept a record of the name and address of the lessee. (Code 1960, As Amend., § 770.010; 96-Or-046, § 2, 5-24-96)

**Cross reference**—Prohibition against deposit of garbage and rubbish in streets, §§ 427.30, 427.40; littering parks and parkways, § PB2-5.

**State Law reference**—Unlawful deposits of garbage and litter, M.S. § 609.68

## 244.60 Temporary housing prohibited

(a) Unless otherwise provided in this section, no camp car, house trailer, automobile, tent or other temporary structure may be parked or placed upon any public street or on any public or private premises or street in the city and used as a shelter or enclosure of persons and their effects for the purpose of living therein.

(b) The director of regulatory services may issue a permit to allow for temporary housing when a specified emergency creates the need to allow for such housing. A permit may be issued only when the emergency creating the need is an act of nature, a technological failure or malfunction, a terrorist incident, a public health emergency, an industrial accident, a hazardous material accident, or destruction caused by a civil disturbance.

(c) When the director of regulatory services issues a permit to allow for temporary housing, the director shall provide that the permit will expire after a specific period, not to exceed six (6) months. The director shall attempt to set the expiration date to coincide with the elimination of the need for temporary housing. The director may grant one (1) six-month extension of this permit.

(d) The director of regulatory services may set conditions on the use of the permit to mitigate the negative impacts of the permit. These conditions may include compliance with applicable statutes, ordinances and/or rules, including but not limited to the Minneapolis Fire Code, Minneapolis Health Code, Minneapolis Building Code, Minneapolis Housing Maintenance Code, and the Minneapolis Zoning Code. In addition, the director may impose any additional appropriate conditions to the use of the temporary housing permit.

(e) The director of regulatory services may revoke the permit if the need for such temporary housing ends, or if the permit holder fails to comply with the conditions set by the director as to the use of the temporary housing permit. (Code 1960, As Amend., § 66.060; 2005-Or-145, § 1, 12-23-05; 2013-Or-161, § 2, 12-6-13)

## 385.65 Interference with pedestrian or vehicular traffic

No person, in any public or private place, shall use offensive, obscene or abusive language, or grab, follow or engage in conduct which reasonably tends to arouse alarm or anger in others, or walk, stand, sit, lie, or place an object in such a manner as to block passage by another person or a vehicle, or to require another person or a driver of a vehicle to take evasive action to avoid physical contact. Acts authorized as an exercise of one's constitutional rights of freedom of speech and assembly, and acts authorized by a permit issued pursuant to the Parade Ordinance, Chapter 447, or the Block Event

Ordinance, Chapter 455, of the Minneapolis Code of Ordinances, shall not constitute interference with pedestrian or vehicular traffic. (88-Or-019, § 1, 2-12-88)

### 427.30 Obstruction, encroachments and littering generally

No person shall erect, build, set up, keep or maintain any house, store, shop or other building or structure, or leave, deposit or place any boxes, merchandise, timber, planks, boards, shingles, casks, barrels, hogsheads, lumber, bricks, stones, trucks, carts, wagons, sleds, carriages upon or in any street, alley or sidewalk. No person shall place, leave, throw, drop or scatter any stones, bricks, mortar, earth, wood, shavings, offal, garbage, rubbish or any other material or substance upon any street, alley, sidewalk or public ground. Any person drawing or transporting any of the aforesaid articles or substances through or upon any of the streets or alleys shall convey and carry the same in tight wagons, carts or boxes so constructed and covered by canvas or other suitable material that such articles and substances cannot fall out or be scattered upon the streets or alleys. If any such articles or substances shall for any reason fall or be scattered upon any street or alley, the same shall be forthwith removed by the person at such time in charge of the vehicle from which such article or substance fell or was scattered.

### 427.40 Depositing injurious matter on highways or adjacent

(a)  No person shall throw or deposit upon any highway any glass, nails, tacks, wire, cans or any other substance likely to injure any person, animal or vehicle upon such highway or upon any public or privately owned land adjacent thereto without the owner's consent.

(b) Any person who drops or permits to be dropped or thrown upon any highway any destructive or injurious material shall immediately remove the same or cause it to be removed.

(c) Any person removing a wrecked or damaged vehicle from a highway shall remove any glass or other injurious substance dropped upon the highway from such vehicle.

(d) No person shall drop or hurl any destructive or injurious material or object at or upon any motor vehicle upon any highway or the occupants thereof.

(e) Any person violating the provisions of this section shall be guilty of a misdemeanor. The record of any conviction of or plea of guilty under this section of a person operating a motor vehicle shall be immediately forwarded to the department of public safety for inclusion upon that offender's driving record. Any second offense or offense thereafter under this section shall require a minimum fine in the amount of one hundred dollars ($100.00). Any judge may, for any violation of this section, order the offender to pick up litter along any public highway or road for four (4) to eight (8) hours under the direction of the department of highways, with the option of a jail sentence being imposed. (Code 1960, As Amend., § 407.220)

**State Law reference**—Similar provisions, M.S. § 169.42.

### 466.240 Assemblies obstructing pedestrian or vehicular traffic

(a)  No person or group of persons shall assemble or cause others to assemble on any sidewalk so as to obstruct the free passage of pedestrians thereon or interfere with the use thereof.

(b) It shall be unlawful for any person individually or as a member of any group of persons to loiter, stand, sit, lie or remain upon or within any street, sidewalk, crosswalk or other public way or otherwise

occupy any portion thereof with the intent or purpose to block, obstruct or interfere with the free passage of any pedestrian thereon or the orderly free flow of vehicular traffic on said street or public way.

(c) This section shall not be interpreted to restrict the lawful exercise of freedom of speech and assembly.

(d) Violation of this section is a petit misdemeanor. (Code 1960, As Amend., § 408.090; 84-Or-069, § 1, 4-27-84)