UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cheryl Sagataw, DeAnthony Barnes, Roberta Strong, and Travis Neloms *on behalf of themselves and a class of similarly-situated individuals*,<br><br>    Plaintiffs,<br><br>v.<br><br>Mayor Jacob Frey, *in his individual and official capacity*,<br><br>    Defendant. | File No. 24-cv-001 (ECT/TNL)<br><br>**OPINION AND ORDER** |

Kira Aakre Kelley and Claire Glenn, Climate Defense Project, Minneapolis, MN, for Plaintiffs Cheryl Sagataw, DeAnthony Barnes, Roberta Strong, and Travis Neloms.

Sharda R. Enslin, Kristin R. Sarff, J. Haynes Hansen, and Heather Passe Robertson, Minneapolis City Attorney's Office, Minneapolis, MN, for Defendant Mayor Jacob Frey.

___

This case concerns a homeless camp the parties refer to as Camp Nenookaasi. Since January 1, 2024, the camp has occupied five different locations in the City of Minneapolis, each on City-owned property. When this case was first filed on January 2, 2024, the camp was located on City-owned property between 12th and 13th Streets and 23rd and 24th Avenues.

Plaintiffs, who alleged they were residents of Camp Nenookaasi at this first location, sought a preliminary injunction to prevent Defendant Mayor Jacob Frey from forcibly removing the camp's residents and clearing the camp from this site. Among other legal theories, Plaintiffs alleged that the camp's anticipated removal would violate their rights

under the Fourth, Fourteenth, and Eighth Amendments to the United States Constitution. Following an expedited briefing process and a hearing, this motion was denied from the bench on January 3. The camp was cleared the next day, January 4.

In the weeks since, the camp has relocated four times, each time to a different City-owned parcel. The first three of these relocations shared basic facts: The Mayor decided to clear the camp. The decision to clear the camp was communicated to the camp's organizers and residents—sometimes with more notice, other times with less or perhaps no notice. The clearing occurred with some level of police presence. Around the time the camp was cleared, its organizers, residents, or perhaps both identified nearby City-owned property to which the camp might be relocated, and camp residents then relocated to that property. In relocating, organizers or camp residents cut through perimeter fencing at the identified property and removed no-trespassing signs so that the camp could be established at the new location.

The fourth relocation was different because it was not ordered by Mayor Frey or prompted by any other City agent's official action. In early February, after the Mayor ordered the camp cleared from its third site, the camp moved to a fourth site on 28th Street between 11th and 12th Avenues. The camp was at this location until February 29. That day, an uncontrolled fire broke out in the camp. The fire destroyed everything in the camp, including yurts, tents, wood-burning stoves, and propane-burning heaters, among other items. *See* Camp Nenookaasi (@campnenookaasi), X (Feb. 29, 2023, 3:30 p.m.) https://twitter.com/campnenookaasi/status/1763315905486885276 (requesting post-fire donations and identifying tents, blankets, cigarettes, water, buddy heaters, firewood, and

financial donations as "current needs"). After the fire, the camp relocated to a fifth location, a City-owned parcel at 2839 14th Avenue South.

This background sets the table for the issue to be decided. On February 20—after filing an Amended Complaint that purports to account for the camp's location changes and that adds a claim under Title II of the Americans with Disabilities Act—Plaintiffs filed a second motion for a preliminary injunction. ECF No. 31. The motion sought an order enjoining Mayor Frey from clearing Camp Nenookaasi from its fourth location. *Id.* ¶ 1(a). An order was issued the next day requiring the Mayor to file its opposition materials by March 1 and scheduling a hearing on Plaintiffs' motion for March 14.

The issue is whether the intervening fire rendered Plaintiffs' preliminary injunction motion moot. For legal and practical reasons, the better answer is that it did. Plaintiffs' motion was specific to the camp's fourth location. That location's address is identified in the motion and the proposed order Plaintiffs submitted. To quote from the motion's primary request:

> Plaintiffs seek to enjoin Defendant Jacob Frey and his officials, employees, agents, assigns, and all those working in concert with Defendant from . . . [e]victing, bulldozing, clearing, sweeping, dismantling, demobilizing, removing infrastructure, or ceasing services to Camp Nenookaasi, *the encampment of unhoused individuals located between 11th and 12th Avenues on 28th Street, Minneapolis Minnesota*.

*Id.* (emphasis added). Owing to the fire, neither the camp nor Plaintiffs remain at that site. The motion reasonably could be denied as moot on just this basis.

3

Plaintiffs argue it would be appropriate to consider their motion as if it concerned the camp's current fifth location, but this is not persuasive. Indeed, a discussion of several issues relevant to this argument shows why the motion should be denied as moot.

(1) The record includes almost no information concerning the camp's current, fifth location. Some missing information seems quite fundamental. For example, though a plaintiff only has standing to seek prospective injunctive and declaratory relief when she faces an ongoing injury or a "real and immediate" threat of future injury, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05, 107 n.8 (1983), no record evidence shows whether any Plaintiff resides in the camp at this site. When asked at the hearing, the two lawyers who appeared for Plaintiffs offered sincere-but-problematic answers to this question. Plaintiffs' first lawyer represented that, to the best of her knowledge, all four Plaintiffs reside at the camp's current site. As support for this response, counsel referred to a newspaper article concerning the fire at the camp's fourth location, Louis Krauss & Andy Mannix, *Large Fire Destroys South Minneapolis Homeless Encampment*, Star Tribune, Feb. 29, 2024, https://www.startribune.com/large-fire-erupts-at-south-minneapolis-homeless-encampment/600347180/. The article does not refer to any Plaintiff. It reports only that, on the day the fire occurred, "some of the camp residents had already moved" to the camp's current site. Plaintiffs' second lawyer represented that Plaintiff Roberta Strong remains at the camp and that she believes Plaintiff Travis Neloms remains in the camp, but counsel lacked information concerning Plaintiffs Cheryl Sagataw and DeAnthony Barnes. Regardless, these facts are not in the record, and counsels' responses do not eliminate uncertainty regarding the issue. To put it directly, it is difficult to understand—and

4

Plaintiffs have not explained—how a Plaintiff who does not reside in the camp today would have standing to seek prospective relief. Without record evidence establishing that a Plaintiff resides in the camp's current location, it would seem irresponsible to consider Plaintiffs' requests for relief with respect to this site.

(2) The record includes no information regarding Mayor Frey's specific plans to clear the camp from the current site. Several unknowns in this respect bear directly on Plaintiffs' own theory of the case. For example, we do not know whether Mayor Frey plans to provide notice of any removal or, if so, the content or timing of any notice. We do not know whether, or the extent to which, social services resources may be made available on site during any planned removal. We do not know the extent to which police officers may be involved or whether a seizure of Plaintiffs' property are planned to, or may, occur. We do not know whether, or in what numbers, shelter beds may be available to Plaintiffs when any clearing occurs. We do not know whether available shelter beds might be acceptable to Plaintiffs. We do not know the extent of community harms, if any, Mayor Frey believes the camp's residents are causing to those who live or work in the camp's vicinity. This is not to suggest whether Plaintiffs' theory of the case is meritorious. It is to say that, if one accepts Plaintiffs' legal theories for argument's sake, several facts that seem significant to Plaintiffs' theories are missing from this record.[1] A decision made without record evidence regarding these facts would depend on hypotheticals.

---

[1] Consider just Plaintiffs' Eighth Amendment theory. For this theory, Plaintiffs cite *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), and argue that its holding should be adopted and applied here. *Martin*'s Eighth Amendment holding is this:

(3) Plaintiffs argue that "Camp Nenookaasi is not a place, it is a community of people." ECF No. 63 at 1. From this starting point, Plaintiffs go on to suggest that no matter where they may relocate within the City of Minneapolis, any removal Mayor Frey might order of Camp Nenookaasi would likely be unlawful. When asked at the hearing, Plaintiffs did not disclaim a theory that Mayor Frey would be enjoined from removing them from even City-owned indoor spaces to which the camp might relocate, including the Minneapolis Convention Center. In other words, under this theory, Plaintiffs would seek issuance of a City-wide injunction that would travel with Camp Nenookaasi wherever it might choose to go and prohibit its removal from any City-owned property it might choose to inhabit. There are several problems with this theory. For this order's purposes, it is enough to mention two. First, Camp Nenookaasi is not the Plaintiff in this case. Four individuals are, so any injunctive relief must be responsive and tailored to their individual circumstances. Second, Plaintiffs cite no authority supporting the notion that a government

---

that "so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters]," the jurisdiction cannot prosecute homeless individuals for "involuntarily sitting, lying, and sleeping in public." [*Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (9th Cir. 2007)]. That is, as long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter.

920 F.3d at 617. Accept Plaintiffs' assertion that Mayor Frey's removal and clearing of a homeless camp is itself a "prosecution" or "criminalizes" homelessness. It is nonetheless difficult to understand how one might determine whether Plaintiffs had the "option of sleeping indoors" without a record showing the availability of those indoor options close in time to the camp's closure. We don't have anything like that in the record here.

6

might reasonably be enjoined from removing government-property trespassers no matter what government property those trespassers might choose to occupy.

If one considers just the big picture, this order could be faulted for delaying a decision on the inevitable. Everyone seems to understand that Mayor Frey intends to clear the camp from its current location at some point, perhaps soon. It is possible the circumstances of this closure will resemble the circumstances of past closures. There is nonetheless an Article III problem with resolving this case on big-picture possibilities. To enjoin government action based on allegations of future injury, a plaintiff must show for Article III's purposes "that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992)). Here, it may not be speculative to predict that Mayor Frey will clear the camp. It is speculative, however, to predict precisely how he will order that the camp's closing be accomplished, and (as noted) details concerning the camp's closure matter a great deal to the claims Plaintiffs have chosen to assert. The other problem is that deciding the case based on big-picture possibilities seems another way of describing a decision based on policy considerations. That too would be inconsistent with Article III.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiffs' Second Motion for Temporary Restraining Order [ECF No. 31] is **DENIED** as moot.

2.	Plaintiffs' Motion to Amend Address in Second Motion for Temporary Restraining Order [ECF No. 64] is **DENIED**.


Dated: March 18, 2024                           s/ Eric C. Tostrud
                                                Eric C. Tostrud
                                                United States District Court