UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CHERYL SAGATAW, DEANTHONY BARNES, ROBERTA STRONG, TRAVIS NELOMS, ALVIN BUTCHER, ADRIAN TIGER, CHANCE ASKENETTE, DEVEN CASTON, LOLA HEGSTROM and RONDEL APPLEBEE, *on behalf of Themselves and a class of similarly-situated individuals,* | Case No. 24-CV-00001 (ECT-TNL) |

                    Plaintiffs,

**ANSWER TO SECOND AMENDED COMPLAINT**

vs.

MAYOR JACOB FREY, *in his individual and official capacity*

                    Defendant.

---

For his Answer to Plaintiffs' Second Amended Complaint ("the SAC"), Defendant Mayor Jacob Frey, in his individual and official capacity, (hereinafter "Mayor Frey" or "Defendant") states and alleges as follows:

Except as admitted, qualified or otherwise pleaded herein, Defendant denies each and every allegation, matter, and thing in the SAC.

Defendant states that the SAC contains footnotes, exhibits, and declarations that are duplicative and are not susceptible to a responsive pleading. To the extent

that the material in the footnotes, exhibits, and declarations can be construed to contain any allegations against Defendant, those allegations, if any, are denied.

## INTRODUCTION

The allegations in the narrative paragraphs appearing under the heading "Introduction" in the SAC are not amenable to an admission or denial in a pleading. Additionally, to the extent that the "Introduction" or other allegations in the SAC use the term "evicted" or "eviction" or "evicting" to imply that Plaintiffs had a legal right to stay or camp on public property, those allegations state a legal conclusion for which no responsive pleading is required. To the extent a response is required, however, the allegations are denied.

In further response to Plaintiffs' "Introduction," Defendant affirmatively states that on January 4, 2024, the City of Minneapolis closed the First Nenookaasi Encampment. (Declaration of Enrique Velazquez ("Velazquez Decl.")[1], ¶ 2.) On the day of the First Nenookaasi Encampment closure, representatives from multiple departments were on site. Staff, including Directors from the City of Minneapolis' Department of Regulatory Services and Department of Community Planning and Economic Development, were present. *Id.* at ¶ 3. Minneapolis Public

---

[1] The Declaration of Enrique Velazquez, Director of the City of Minneapolis Department of Regulatory Services, is filed as ECF Doc. 107. Defendant hereby incorporates by reference this Declaration into Defendant's response to each of the numbered allegations in Plaintiffs' SAC.

Works staff was present to assist with cleaning the site. Minneapolis Police Department officers were on site to support the other City staff and ensure that homeless individuals, the community, and City staff were safe throughout the duration of the encampment closure. *Id.*

On the day of the closure, City staff stood by as those in the First Nenookaasi Encampment conducted a morning ceremony, held a lengthy press conference, and packed all of their belongings for transport off of the site. *Id.* at ¶4. On the day of the closure, individuals at the First Nenookaasi Encampment were given unlimited time to leave with their belongings. *Id.* at ¶ 5. The City had buses standing by to transport people to the Catholic Charities' Opportunity Center, where they could connect with services, including but not limited to housing resources and medical and mental health care providers, as well as have access to storage lockers, internet services, breakfast and lunch services, and laundry. *Id.* at ¶ 6. No one at the encampment chose to take these services. *Id.*

On January 2, 2024, two days before the closure of the First Nenookaasi Encampment, individuals associated with First Nenookaasi Encampment broke into a locked, fenced property owned by the Minneapolis Community Planning and Economic Development Department ("CPED") located at 2601 14th Avenue South. *Id.* at ¶ 7. Individuals cut a large hole in the secured fence, tore down "no trespassing" signs that were posted on the site, and began moving in various

3

supplies, including a large amount of firewood. *Id.* By the next day, individuals associated with the First Nenookaasi Encampment had erected four large yurts on the 2601 14th Avenue South CPED property. *Id.*

After the closure of the First Nenookaasi Encampment on January 4, 2024, a number of individuals departed the First Nenookaasi Encampment and proceeded directly to 2601 14th Avenue South. *Id.* at ¶ 8. Those individuals moved their belongings onto the City-owned property and declared this site to be the next iteration of Camp Nenookaasi. *Id.* Within hours, over 25 individuals and over a dozen yurts had moved from the First Nenookaasi Encampment to the Second Nenookaasi Encampment. *Id.*

On January 5, 2024, City staff met with Camp Organizers. City staff told the Camp Organizers that they could not stay at the Second Nenookaasi Encampment and needed to leave. *Id.* at ¶ 9. On January 8, 2024, the City once again reposted notice of trespassing signs. Those signs were once again torn down by individuals in the Second Nenookaasi Encampment. *Id.* at ¶ 10. On January 17, 2024, City staff again met with Camp Organizers and told them that the City would be closing the Second Nenookaasi Encampment. *Id.* at ¶ 11.

On January 18, 2024, the City's Health Department was notified by the Minnesota Department of Health of a possible gastrointestinal illness in the Second Nenookaasi Encampment. *Id.* at ¶ 12. The City's Health Department team

4

immediately initiated an investigation. On January 19, 2024, City Health Department staff visited the Second Nenookaasi Encampment and found that 20 to 30 people were ill with symptoms consistent with a viral gastrointestinal illness. *Id.* at ¶ 13. During the site visit, the Health Department team provided cleaning supplies for common areas, including bleach solution in spray bottles, additional bleach and water for replenishing the spray bottle, gloves, and paper towels. *Id.* at ¶ 14. The Health Department team also met with individuals in the Second Nenookaasi Encampment to discuss community guidelines for minimizing transmission, as well as recommended that new portapotties be provided. *Id.* The Health Department determined that closure of the Second Nenookaasi Encampment should be postponed until the virus was contained so as to minimize transmission to other vulnerable populations. *Id.* at ¶ 15.

The Health Department visited the Second Nenookaasi Encampment again on January 20 and 21, 2024. *Id.* at ¶ 16. On January 24, 2024, after 72 hours with no new cases, the City's Health Department determined that the virus was contained, and that closure of the Second Nenookaasi Encampment could move forward. *Id.* at ¶ 17. On January 24, 2024, City staff emailed Camp Organizers and told them that the Second Nenookaasi Encampment would be closing soon. *Id.*

On January 28, 2024, a shooting of a man occurred immediately outside of the Second Nenookaasi Encampment. *Id.* at ¶ 18. On January 30, 2024, after weeks

of notice, the City closed the Second Nenookaasi Encampment. *Id.* at ¶ 19. On the day of the closure, individuals at the Second Nenookaasi Encampment were given an unlimited amount of time to pack their belongings. *Id.* at ¶ 20. Between the inception of the Second Nenookaasi Encampment on January 4, 2024, and its closure on January 30, 2024, the City's Homeless Response Team made eight separate site visits, each time offering connection to services, shelter, and storage options. *Id.* at ¶ 21. No one at the Second Nenookaasi Encampment chose to use the City's storage options. *Id.*

Following the closure of the Second Nenookaasi Encampment on January 30, 2024, individuals from the encampment moved to another City-owned property, a CPED property located at 2213 16th Avenue South in Minneapolis. *Id.* at ¶ 22. This property was fenced and locked, with prominent "no trespassing" signs posted. *Id.* at ¶ 23. Individuals associated with the encampment cut open the fence, remove a section, and move their belongings inside the property in what would become the Third Nenookaasi Encampment. *Id.* Individuals associated with the Third Nenookaasi Encampment also quickly tore down the "no trespassing" signs. *Id.* at ¶ 24. That evening, City staff returned to the site of the Third Nenookaasi Encampment and reposted "no trespassing" signs. *Id.* By the following morning, the signs were torn down again. On January 31, 2024, the City returned and again posted "no trespassing signs." *Id.*

6

On February 1, 2024, the City closed the Third Nenookaasi Encampment. *Id.* at ¶ 25. On the day of the closure, individuals were given an unlimited amount of time to pack up their belongings. *Id.* at ¶ 26. Individuals from the encampment moved to another City-owned property. *Id.* at ¶ 27. This property was a locked, fenced, CPED property located at 1100 28th Avenue East in Minneapolis. *Id.* Individuals associated with the encampment broke into the locked and secured property by cutting through the fence and relocated City-owned infrastructure staged in this secure location then began setting up another encampment. *Id.* Within a day, Plaintiffs had erected approximately 18 to 20 yurts at the Fourth Nenookaasi Encampment. *Id.*

It is the City's understanding that the smoke in the air from the Fourth Nenookaasi Encampment's bonfires was causing significant problems for the Allina Central Laboratory located nearby at 2800 10th Avenue South in Minneapolis. *Id.* at ¶ 28. On February 25, 2029, Allina staff reported to City staff that employees of the Laboratory had begun noticing a strong odor of campfire smoke inside the Laboratory and determined that the smell was coming from the numerous fires at the Fourth Nenookaasi Encampment. *Id.* at ¶ 29. The City was informed that this smoke not only created an uncomfortable and disruptive work environment for the Laboratory employees, but there was also concern that if the

smoke level continued to increase, particulates in the air could impact the Laboratory's sensitive testing equipment. *Id.* at ¶ 30. Allina further informed the City that without functioning testing equipment, the Laboratory would not be able to operate, which would have a significant impact on patient access to medical testing. *Id.*

On February 28, 2024, City staff visited the Fourth Nenookaasi Encampment and spoke with individuals about the impact the smoke was having on the area. *Id.* at ¶ 31.  Staff advised to burn class one materials only and discontinue usage of other portable heat sources. *Id.* Class one materials consist of untreated wood products suitable for use in wood burning fire pits and fireplaces. *Id.*

On February 29, 2024, a massive fire broke out midday at the Fourth Nenookaasi Encampment. *Id.* at ¶ 32. Within a matter of minutes, the entire Fourth Encampment went up in flames. *Id.* The Minneapolis Fire Department and other first responder personnel immediately responded to the scene. *Id.* Within a short period of time, Minneapolis firefighters had the blaze extinguished, but almost nothing was left but charred remains of the encampment residents' property.  *Id.* The Fire created a massive amount of smoke in the area. *Id.* at ¶ 33.

Immediately following the fire, individuals from the Fourth Nenookaasi Encampment moved to another City-owned property located at 2939 14th Avenue South. *Id.* at ¶ 34. This property was fenced and locked, with prominent "no

trespassing" signs posted. *Id.* Individuals associated with the encampment cut open the fence, removed a section, and moved their belongings inside the property in what would become the Fifth Nenookaasi Encampment. *Id.*

From March through June 2024, the Fifth Nenookaasi Encampment grew rapidly in size to more than 70 individuals across 50 structures. *Id.* at ¶ 35. From March through June 2024, the City's Homeless Response Team made ten separate site visits, each time offering connection to services, shelter, and storage options. *Id.* No one at the Fifth Nenookaasi Encampment chose to use the City's storage options. *Id.*

On July 25, 2024, the City closed the Fifth Nenookaasi Encampment. *Id.* at ¶ 36. On the day of the closure, individuals were given an unlimited amount of time to pack up their belongings. *Id.* at ¶ 37. At the time of the closure of the Fifth Nenookaasi Encampment, there were 10 unhoused individuals staying at the site. *Id.* at ¶ 38. At the time of the closure, Hennepin County reported there were 33 shelter spaces available – 19 for men, 10 for women, and 3 mixed gender spaces. *Id.*

Following the closure of the Fifth Nenookaasi Encampment, individuals from the encampment moved to another City-owned property, a CPED property located at 2313 13th Avenue South in Minneapolis. *Id.* at ¶ 39. The CPED property located at 2313 13th Avenue South was the site of the First Nenookaasi

Encampment which individuals had already been trespassed from at the time of initial closure on January 4, 2024. *Id.* at ¶ 40.

This property was fenced and locked, with prominent "no trespassing" signs posted. *Id.* at ¶ 41. Individuals associated with the encampment cut open the fence, removed a section, and moved their belongings inside the property in what would become the Sixth Nenookaasi Encampment. *Id.*

On October 7, 2024, the City closed the Sixth Nenookaasi Encampment. *Id.* at ¶ 42. Individuals remained near the property on the public right of way adjacent to the site of the Sixth Nenookaasi Encampment. *Id.* at ¶ 43. On October 13, 2024, the City cleared the sidewalk adjacent to the Sixth Nenookaasi Encampment. *Id.* at ¶ 44.

Following the closure of the Sixth Nenookaasi Encampment and public right of way, individuals from the encampment moved to another City-owned property, a CPED property located at 2839 14th Avenue South. *Id.* at ¶ 45. This property was fenced and locked, with prominent "no trespassing" signs posted. *Id.* Individuals associated with the encampment cut open the fence, removed a section, and moved their belongings inside the property in what would become the Seventh Nenookaasi Encampment. *Id.*

The CPED property located at 2313 13th Avenue South was the site of the Fifth Nenookaasi Encampment which individuals had already been trespassed

from at the time of initial closure on July 25, 2024. *Id.* at ¶ 46. The Seventh

Nenookaasi Encampment remains at this location to this day. *Id.* at ¶ 47.

## JURISDICTION

1.      In response to ¶ 1 of the SAC, Defendant admits that Plaintiffs

purport to bring the stated claims.  Denies the claims have merit.

2.      In response to ¶ 2 of the SAC, the allegations state a legal conclusion

to which no response is required.  To the extent a response is required, denied.

## PARTIES

3.      States that Defendant lacks sufficient information to form a belief as

to the truth of the allegations in ¶ 3 of the SAC, and, therefore, denies the same.

4.      States that Defendant lacks sufficient information to form a belief as

to the truth of the allegations in ¶ 4 of the SAC, and, therefore, denies the same.

5.      States that Defendant lacks sufficient information to form a belief as

to the truth of the allegations in ¶ 5 of the SAC, and, therefore, denies the same.

Defendant affirmatively states that the "area under Interstate 94" and the "Wall of

Forgotten Natives" is property that is not owned or operated by the City of

Minneapolis and not under the direction or control of Defendant.

6.      Denies that the Encampment was a safe place for Plaintiff to stay.

States that Defendant lacks sufficient information to form a belief as to the truth of

the remaining allegations in ¶ 6 of the SAC, and, therefore, denies the same.

7.      Denies the allegations in ¶ 7 of the SAC.

8.      States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 8 of the SAC, and, therefore, denies the same.

9.      States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 9 of the SAC, and, therefore, denies the same.

10.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 10 of the SAC, and, therefore, denies the same.

11.     Defendant denies any implication in ¶ 11 of the SAC that the Encampment offered adequate access to heat or the best connection to permanent housing. States Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in ¶ 11 of the SAC, and, therefore, denies the same.

12.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 12 of the SAC, and, therefore, denies the same. Affirmatively states that the Encampment was the site of significant criminal and violent activity, including murder, assault, human trafficking and drug use.

13.     Denies that Defendant was involved in any prior "evictions" of Plaintiff and denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 13. States that Defendant lacks sufficient information to form a

belief as to the truth of the remaining allegations in ¶ 13 of the SAC, and, therefore, denies the same.

14.     Defendant denies that Plaintiff has experienced any "evictions" as allegation in¶ 14 of the SAC. States that Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in ¶ 14 of the SAC, and, therefore, denies the same.

15.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 15 of the SAC, and, therefore, denies the same.

16.     Denies that Defendant was involved in any prior "evictions" or "displacements" of Plaintiff. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 16 of the SAC, and, therefore, denies the same.

17.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 17 of the SAC, and, therefore, denies the same.

18.     Denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 18. of the SAC. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 18 of the SAC, and, therefore, denies the same.

19.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 19 of the SAC, and, therefore, denies the same.

20.     States that Defendant lacks sufficient information to form a belief as to Plaintiff's housing status, and, therefore, denies the same. Defendant denies the remaining allegations in ¶ 20 of the SAC.

21.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 21 of the SAC, and, therefore, denies the same.

22.      States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 22 of the SAC, and, therefore, denies the same.

23.     Denies that Plaintiff experienced any "evictions" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 23 of the SAC, and, therefore, denies the same.

24.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 24 of the SAC, and, therefore, denies the same.

25.     Denies that the Encampment has offered stability, safety, or appropriate care as alleged in ¶ 25 of the SAC. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 25 of the SAC, and, therefore, denies the same.

26.     Denies the implication that the Encampment was safe, peaceful, or non-violent. States that Defendant lacks sufficient information to form a belief as

to the truth of any remaining allegations in ¶ 26 of the SAC, and, therefore, denies the same.

27.     Denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 27 of the SAC. Denies that Plaintiff experienced "evictions" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 27 of the SAC, and, therefore, denies the same.

28.     Denies that Plaintiff experienced or will experience an "eviction" at the Encampment or any subsequent iteration of the Encampment. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 28 of the SAC, and, therefore, denies the same.

29.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 29 of the SAC, and, therefore, denies the same.

30.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 30 of the SAC, and, therefore, denies the same. Defendant affirmatively states that the "Wall of Forgotten Natives" is property that is not owned or operated by the City of Minneapolis and not under the direction or control of Defendant.

31.     Denies the allegations in ¶ 31 of the SAC.

32.    Defendant admits that a fire destroyed the Encampment on 28th Street and 12th Avenue. Denies the remaining allegations in ¶ 32 of the SAC.

33.    Denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 33 of the SAC. Denies that Plaintiff experienced "evictions" as a result of Defendant's conduct. Denies the remaining allegations in ¶ 33 of the SAC.

34.    Denies that Plaintiff experienced "evictions" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 34 of the SAC, and, therefore, denies the same.

35.    States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 35 of the SAC, and, therefore, denies the same.

36.    States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 36 of the SAC, and, therefore, denies the same.

37.    As to the allegations in ¶ 37 of the SAC, Defendant affirmatively states that the "Wall of Forgotten Natives" is property that is not owned or operated by the City of Minneapolis and not under the direction or control of Defendant. States that Defendant lacks sufficient information to form a belief as to the truth of the allegations that Plaintiff was at the Encampment, and, therefore, denies the same. Denies that Plaintiff experienced "evictions" as a result of Defendant's conduct.

Admits that individuals are given time to retrieve belongings and help others move.

38. Denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 38 of the SAC. Denies that Plaintiff experienced an "eviction" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 38 of the SAC, and, therefore, denies the same.

39. States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 39 of the SAC, and, therefore, denies the same.

40. States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 40 of the SAC, and, therefore, denies the same.

41. States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 41 of the SAC, and, therefore, denies the same.

42. States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 42 of the SAC, and, therefore, denies the same.

43. Denies the allegations that there is "corruption in the program." States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 43 of the SAC, and, therefore, denies the same.

44. States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 44 of the SAC, and, therefore, denies the same.

45.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 45 of the SAC, and, therefore, denies the same.

46.     Denies that the Encampment is "safe." Denies that Defendant's conduct caused Plaintiff to lose the belongings referenced in ¶ 46 of the SAC. Denies that Plaintiff experienced an "eviction" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 46 of the SAC, and, therefore, denies the same.

47.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 47 of the SAC, and, therefore, denies the same.

48.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 48 of the SAC, and, therefore, denies the same.

49.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 49 of the SAC, and, therefore, denies the same.

50.     Denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 50 of the SAC. Denies that Plaintiff experienced an "eviction" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 50 of the SAC, and, therefore, denies the same.

51.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 51 of the SAC, and, therefore, denies the same.

52.    States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 52 of the SAC, and, therefore, denies the same.

53.    States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 53 of the SAC, and, therefore, denies the same.

54.    Denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 54 of the SAC. Denies that Plaintiff experienced "evictions" as a result of Defendant's conduct. Defendant affirmatively states that the "Wall of Forgotten Natives" is property that is not owned or operated by the City of Minneapolis and not under the direction or control of Defendant. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 54 of the SAC, and, therefore, denies the same.

55.    Denies that Plaintiff experienced "evictions" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 55 of the SAC, and, therefore, denies the same.

56.    States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 56 of the SAC, and, therefore, denies the same.

57.    States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 57 of the SAC, and, therefore, denies the same.

58.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 58 of the SAC, and, therefore, denies the same.

59.     Denies that Defendant's conduct caused Plaintiff to lose the items described in ¶ 59 of the SAC. Denies that Plaintiff experienced an "eviction" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 59 of the SAC, and, therefore, denies the same.

60.     Denies the allegations in ¶ 60 of the SAC.

61.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 61 of the SAC, and, therefore, denies the same.

62.     States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 62 of the SAC, and, therefore, denies the same.

63.     Denies that Plaintiff experienced "evictions" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth of any remaining allegations in ¶ 63 of the SAC, and, therefore, denies the same.

64.     Admits that Plaintiffs seek to bring this action as a purported class action.  Denies that Plaintiffs are entitled to class certification. Denies that Plaintiffs "experiences evictions" as a result of Defendant's conduct. States that Defendant lacks sufficient information to form a belief as to the truth the allegation that

unidentified individuals in the purported class are unhoused. Denies the remaining allegations in ¶ 64 of the SAC.

65.    States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 65 of the SAC, and, therefore, denies the same.

66.    Denies that Plaintiffs or any purported class member experienced "evictions" at the Encampment and, therefore, denies the allegations in ¶ 66 of the SAC.

67.    Denies that Plaintiffs or any purported class member experienced "evictions" at the Encampment and, therefore, denies the allegations in ¶ 67 of the SAC.

68.    Upon information and belief, Defendant admits the allegations in ¶ 68 of the SAC that each of the Plaintiffs have "their own unique story" and, therefore, affirmatively states that Plaintiffs are not appropriate class representatives.  Denies the remaining allegations in ¶ 68 of the SAC.

69.    Denies the allegations in ¶ 69 of the SAC.

70.    Denies that Plaintiffs or any purported class member experienced "evictions" or "pointless displacement." Admits that Plaintiffs often reform a new Encampment after one is closed. States that Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in ¶ 70 of the SAC, and, therefore, denies the same.

71.     Defendant denies that the purported "Represented Class Plaintiffs and their Representatives" have experienced or will experience "evictions" from the Encampment.    Defendant affirmatively alleges that neighbors of the Encampment, both past and the current iterations, have expressed numerous, serious concerns health and safety concerns related to the Encampment. Defendant denies the remaining allegations in ¶ 71 of the SAC.

72.     As to the first sentence of ¶ 72, admits the Plaintiffs purport to sue Defendant in his official and individual capacity. Admits the allegations in the second and third sentence of ¶ 72. The remaining allegations in ¶ 72 constitute a legal conclusion to which no responsive pleading is required.

73.     Admits that ending homelessness was an important part of Defendant's campaign for Mayor. Affirmatively states that ending homeless in Minneapolis continues to be a priority of Defendant.   Denies the remaining allegations in ¶ 73 of the SAC.

## CLASS QUALIFICATIONS FOR CERTIFICATION

74.     As to the allegations in ¶ 74 of the SAC, admits that Plaintiffs seek to bring this action as a purported class action.  Denies that this case is suitable for class certification and denies that Plaintiffs are suitable class representatives.

*Class Formation*

75.    Denies that this case meets the requirements for class certification. The remaining allegations in ¶ 75 of the SAC constitute a legal conclusion and citation to which no responsive pleading is required.

76.    Denies the allegations in ¶ 76 of the SAC.

77.    Denies the allegations in ¶ 77 of the SAC.

78.    Denies the allegations in ¶ 78 of the SAC.

79.    Denies the allegations in ¶ 79 of the SAC.

*Type of Action*

The allegations in the narrative paragraph appearing under the heading "Type of Action" in the SAC are not amenable to an admission or denial in a pleading and constitute a legal conclusion and citation to which no responsive pleading is required.  To the extent a response is required, the allegations are denied

**FACTUAL BACKGROUND**

80.    States that Defendant lacks sufficient information to form a belief as to the truth of the allegations in the first sentence of ¶ 80 of the SAC and, therefore, denies the same.  Denies the remaining allegations in ¶ 80 of the SAC.

81.    Denies that Defendant has engaged in "systemic and genocidal" displacement. States that the remaining allegations in ¶ 81 of the SAC do not pertain to Defendant and that, therefore, no response is required.

82.    States that the allegations in ¶ 82 of the SAC do not pertain to Defendant and that, therefore, no response is required.

83.    States that the allegations in ¶ 83 of the SAC do not pertain to Defendant and that, therefore, no response is required.

84.    Denies that Plaintiffs were "evicted" by the conduct of Defendant. States that the remaining allegations in ¶ 84 of the SAC do not pertain to Defendant and that, therefore, no response is required.

85.    The first sentence of ¶ 85 of the SAC is too vague to allow for susceptible response and Defendant, therefore, denies the remaining allegations. Denies the second sentence of ¶ 85 of the SAC.

86.    Denies the allegations in ¶ 86 of the SAC.

87.    Denies the allegations in ¶ 87 of the SAC.

88.    Plaintiffs' allegation that Defendant "played a muted role" is too vague to allow for a responsive pleading. Admits that the Minneapolis "city government" under the direction of Defendant has spent extensive time, resources and funds providing access to temporary shelter and permanent housing options for the unhoused. As to the remaining allegations in ¶ 88 of the SAC, Defendant

lacks sufficient information to form a belief as to the truth the allegations and, therefore, denies the remaining allegations

89.     Admits that Defendant was concerned about the serious public health and human safety risks associated with the encampment at Powderhorn Park in 2020. Denies the remaining allegations in ¶ 89 of the SAC.

90.     Denies the allegations in ¶ 90 of the SAC.

91.     Admits that the Powderhorn Park encampment was closed by the Minneapolis Parks and Recreation Board and the Minneapolis Park Police Department, neither of which are under the direction or control of Defendant. Denies the remaining allegations in ¶ 91 of the SAC.

92.     As to the allegations regarding the description or experience of Plaintiffs or unidentified members of the unhoused population, Defendant lacks sufficient information to form a belief as to the truth of the allegations in ¶ 92 of the SAC and they are, therefore, denied.   Denies the remaining allegations in ¶ 92 of the SAC.

93.     Denies the allegation in ¶ 93 of the SAC.

94.     Denies the allegation in ¶ 94 of the SAC.

95.     Admits that ending homelessness was part of Defendants' mayoral campaign.  Denies the remaining allegations in ¶ 95 of the SAC.

96.     As to the allegations in ¶ 96 of the SAC, Defendant lacks sufficient information to form a belief as to the truth of the allegations, they are therefore denied.

97.     Defendant admits that local housing resources exist.  As to the remaining allegations in ¶ 97 of the SAC, Defendant lacks sufficient information to form a belief as to the truth of the allegations, they are therefore denied.

98.     Denies the allegation in ¶ 98 of the SAC.

99.     Admits that 90 new shelter beds were made available on January 1 and 2, 2024.  Denies the remaining allegations in ¶ 99 of the SAC.

100.    Denies the allegations in ¶ 100 of the SAC.

101.    Denies the allegations in ¶ 101 of the SAC.

102.    Denies the allegations in ¶ 102 of the SAC.

103.    Denies the allegations in ¶ 103 of the SAC.

104.    Denies the allegations  in ¶ 104 of the SAC.  Affirmatively alleges that the Encampment does not benefit neighborhoods or people staying at the Encampments and does not represent an interim solution to permanent housing.

105.    As to the allegations in ¶ 105 of the SAC, admits that there was a meeting between organizers, some City council members, and others from the City of Minneapolis enterprise. States that Defendant lacks sufficient information to form a belief as to the truth the allegations regarding who was invited. Admits that

Defendant was unable to attend the meeting in person but affirmatively states that he sent a representative from his office to attend the meeting.

106.    Denies the allegations in ¶ 106 of the SAC.

107.    Admits that the City of Minneapolis has reasonable policies and procedures in place relating to the closure of unlawful encampments to safeguard people's rights, if any, associated with a closure, and those policies and procedures are published on the City's website.    Admits that Plaintiffs and others at the Encampment have notice that they must vacate. Denies any remaining allegations in ¶ 107 of the SAC.

108.    Denies the allegations in ¶ 108 of the SAC.

109.    Denies the allegations in ¶ 109 of the SAC.

110.    Denies the allegations in ¶ 110 of the SAC.

111.    Denies the allegations in ¶ 111 of the SAC.

112.    Admits that material was placed on City owned property to prevent individuals from unlawfully encamping on the property. Denies any remaining allegations in ¶ 112 of the SAC.

113.    Admits that the Mayor's Office has a goal of deterring encampments. Affirmatively allege that the Mayor's Office has a goal of transitioning individuals to permanent housing.  Denies any remaining allegations in ¶ 113 of the SAC.

114.    Denies the allegations in ¶ 114 of the SAC.

115.    Denies the allegations in ¶ 115 of the SAC.

## CAUSE OF ACTION

### COUNT I:

**Unlawful Seizure & Destruction of Plaintiffs' Property in Violation of the Fourth Amendment of the United States Constitution and Article l, Section 10 of the Minnesota Constitution**

116.    Defendant repeats all prior responses.

117.    The allegations in ¶ 117 of the SAC state a legal conclusion to which no response is required.

118.    The allegations in ¶ 118 of the SAC state a legal conclusion to which no response is required.

119.    Denies the allegations in ¶ 119 of the SAC.

120.    Denies the allegations in ¶ 120 of the SAC.

121.    Denies the allegations in ¶ 121 of the SAC.

### COUNT II:

**Procedural Due Process Violations Under the Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the Minnesota Constitution**

122.    Defendant repeats all prior responses.

123.    The allegations in ¶ 123 of the SAC state a legal conclusion to which no response is required.

124.    Denies the allegations in ¶ 124 of the SAC.

125.   Denies the allegations in ¶ 125 of the SAC.

126.   Denies the allegations in ¶ 126 of the SAC.

## COUNT III:

**State-Created Danger in Violation of the Right to Substantive Due Process Under the Fourteenth Amendment of the United States Constitution and Minnesota Constitution**

127.   Defendant repeats all prior responses.

128.   Denies the allegations in ¶ 128 of the SAC.

129.   Denies the allegations in ¶ 129 of the SAC.

130.   Denies the allegations in ¶ 130 of the SAC.

131.   Denies the allegations in ¶ 131 of the SAC.

132.   Denies the allegations in ¶ 132 of the SAC.

133.   Denies the allegations in ¶ 133 of the SAC.

134.   Denies the allegations in ¶ 134 of the SAC.

135.   Denies the allegations in ¶ 135 of the SAC.

## COUNT IV:

### Intentional Infliction of Emotional Distress

136.   Defendant repeats all prior responses.

137.   The allegations in ¶ 137 of the SAC state a legal conclusion to which

no response is required.

138.   Denies the allegations in ¶ 138 of the SAC.

139.    Denies the allegations in ¶ 139 of the SAC.

140.    Denies the allegations in ¶ 140 of the SAC.

141.    Denies the allegations in ¶ 141 of the SAC.

142.    Denies the allegations in ¶ 142 of the SAC.

143.    Denies the allegations in ¶ 143 of the SAC.

144.    Denies the allegations in ¶ 144 of the SAC.

145.    Denies the allegations in ¶ 145 of the SAC.

## COUNT V:

**Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. 12131 et seq.**

146.    Defendant repeats all prior responses.

147.    The allegations in ¶ 147 of the SAC state a legal conclusion to which no response is required.

148.    The allegations in ¶ 148 of the SAC state a legal conclusion to which no response is required.

149.    The allegations in ¶ 149 of the SAC state a legal conclusion to which no response is required.

150.    The allegations in ¶ 150 of the SAC state a legal conclusion to which no response is required.

151.    Denies the allegations in ¶ 151 of the SAC.

152.    Denies the allegations in ¶ 152 of the SAC.

153.    Denies the allegations in ¶ 153 of the SAC.

154.    The allegations in ¶ 154 of the SAC state a legal conclusion to which no response is required.

155.    Admits that some individuals have asked Mayor Frey to postpone the closure of the Encampment.  Denies the remaining allegations in ¶ 155 of the SAC.

156.    Admit that the Encampment was closed after the Court in this action denied Plaintiffs' motion for a temporary restraining order because the closure of the Encampment was lawful.   Denies the remaining allegations in ¶ 156 of the SAC.

157.    Denies the allegations in ¶ 157 of the SAC.

158.    Denies the allegations in ¶ 158 of the SAC.

159.    Denies the allegations in ¶ 159 of the SAC.

160.    Denies the allegations in ¶ 160 of the SAC.

161.    Denies the allegations in ¶ 161 of the SAC.

162.    Denies the allegations in ¶ 162 of the SAC.

163.    Denies the allegations in ¶ 163 of the SAC.

## DECLARATORY RELIEF

164.    Defendant repeats all prior responses.

165.    Denies the allegations in ¶ 165 of the SAC.

166.    Denies the allegations in ¶ 166 of the SAC.

## PRAYER FOR RELIEF

Plaintiffs' "prayer for relief" is not amenable to an admission or denial in a pleading.  To the extent a response is required, denied.

## JURY DEMAND

Defendant acknowledges that Plaintiffs demand a trial by jury, Defendant also demands a trial by jury.

## AFFIRMATIVE DEFENSES

1. The SAC fails to state a claim upon which relief can be granted.

2. The actions upon which the SAC is made were privileged, were commanded or authorized by law, and were done in a reasonable and lawful manner under the circumstances, such that the Defendant is immune from liability.

3. Defendant or any City employee acting on Defendant's behalf is entitled to qualified immunity, official immunity, and/or statutory immunity from liability.

4. Defendant is entitled to immunity under Minn. Stat. § 466.03.

5. Defendant's liability is limited by Minn. Stat. § 466.04.

7. Defendant denies that Plaintiffs have any right to attorney's fees in this action.

8.      Plaintiffs have failed to avoid or mitigate the alleged detriment or damages.

9.      Plaintiffs have failed to exhaust administrative remedies.

10.    Plaintiffs' claims are moot.

11.    Plaintiffs lack standing.

12.    Defendant denies that Plaintiffs have sustained any damages.

WHEREFORE, Defendant prays for an Order of this Court as follows:

1.      Dismissing the allegations and Counts in Plaintiffs' SAC on the merits and with prejudice;

2.      Awarding the Defendant all reasonable costs, disbursements, and attorneys' fees to the fullest extent allowed by law; and

3.      For such other and further relief as this Court deems appropriate.


Dated:  October 29, 2024                    KRISTYN ANDERSON
                                            City Attorney
                                            By */s Sharda Enslin*
                                            SHARDA ENSLIN (#389370)
                                            KRISTIN R. SARFF (#388003)
                                            HEATHER P. ROBERTSON (#390470)
                                            J. HAYNES HANSEN (#399102)
                                            Assistant City Attorneys
                                            Minneapolis City Attorney's Office
                                            350 South Fifth Street, Room 210
                                            Minneapolis, MN 55415
                                            (612) 673-2180
                                            (612) 673-3919
                                            (612) 673-3949
                                            (612) 673-3339

sharda.enslin@minneapolismn.gov
kristin.sarff@minneapolismn.gov
heather.robertson@minneapolismn.gov
haynes.hansen@minneapolismn.gov

*Attorneys for Defendant Mayor Jacob Frey*