UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHERYL SAGATAW, DEANTHONY BARNES, ROBERTA STRONG, TRAVIS NELOMS, ALVIN BUTCHER, ADRIAN TIGER, CHANCE ASKENETTE, DEVEN CASTON, LOLA HEGSTROM, and RONDEL APPLEBEE *on behalf of themselves and a class of similarly-situated individuals*,<br><br>Plaintiffs,<br><br>vs.<br><br>MAYOR JACOB FREY, *in his individual and official capacity*,<br><br>Defendant. | Civil Action No.<br><br>0:24-cv-00001-ECT/TNL<br><br>**DECLARATION OF KIRA KELLEY** |

I, Kira Kelley, submit the following declaration in support of Plaintiffs' Motion to Extend Factual Discovery Deadline:

1. I am a part-time staff attorney at the Climate Defense Project. I submit this declaration on behalf of my clients, the Plaintiffs in this case.

2. My co-counsel for these cases, Claire Glenn, and I represent Plaintiffs in this case *pro bono*. Another Minneapolis-based attorney outside of our firm has also been providing limited *pro bono* guidance and advisory assistance in this case.

3. The Climate Defense Project is a small legal nonprofit with limited resources and no support staff.

1

4. Attorney Glenn was on parental leave from August 21, 2024 until November 18, 2024.

5. On July 9, 2024, more than three dozen individuals wrote directly to the Court seeking to be included as Plaintiffs in this case and requesting legal assistance.

6. Attorney Glenn and I mailed letters to each of those individuals on July 31, 2024, providing more information about the lawsuit and how we could be contacted.

7. A significant number of these letters were returned unopened, so over the course of approximately the next three months, I made additional attempts to make contact with these individuals and assist them in understanding the proper mechanism for joining the lawsuit. These attempts included numerous follow-up phone and house calls, and in-person visits to various known encampments where evicted residents of Nenookaasi had since relocated.

8. I spent several dozen hours in August and September sitting in or near various encampments in East Phillips with a sign that said "Ask Me About the Nenookaasi Lawsuit," visiting with residents, and generally making myself known and available to unhoused individuals as much as possible under the circumstances.

9. During this time, several individuals were able to make contact with me, to give declarations of their experiences, and to ask for my representation and their inclusion in the lawsuit.

10. On August 12, 2024, my co-counsel and I also reached out to Defendant's counsel to set up an organizational deposition of the City of Minneapolis with Defendant's attorneys.

11. This organizational deposition was intended to inform Plaintiffs' subsequent discovery requests, allowing them to be tailored and efficient.

12. In late August, I continued exchanging emails with Defendant's counsel to set up an organizational deposition with the City. We held a meet-and-confer regarding the scope of the deposition on September 6, 2024, during which time we came to an agreement on the topics to be covered at the deposition. This agreement was reached, in part, because the parties reached an understanding that several topics originally noticed for deposition would be more appropriately disclosed in a request for production.

13. On September 13, 2024, I sent Defendant's counsel an email with the finalized deposition notice, pending a confirmation of the deponent's availability. Defendant's counsel did not respond to the email.

14. On September 30, 2024, I sent Defendant's counsel another email, following up on our prior settlement conversations held over video and email. I had

been optimistic about the possibility of reaching an agreement. Defendant's counsel did not respond to this email.

15. On November 21, 2024, I reached out to Defendant's counsel in an attempt to move the conversations forward regarding settlement and the organizational deposition.

16. Defendant's counsel responded on November 25, 2024, and the parties' counsel exchanged emails over the next several days regarding scheduling. Initially, Defendant's counsel indicated that the deponent was not available until after the December 15, 2024, deadline and that Defendant's counsel would be willing to stipulate to a one-week extension of that deadline in order to accommodate the deponent's schedule.

17. I responded on November 29, 2024, asking if a longer extension would be more appropriate, envisioning that we would be scheduling individual depositions in due course after the organizational deposition of the City. It was my understanding that it is common practice to depose the entity first, as a preliminary matter, and that both parties submit written discovery requests and schedule depositions of individuals afterwards, as informed by the initial organizational deposition.

18. On December 2, 2024, Defendant's counsel revoked the offer to stipulate to an extension and notified me that the City's deponent was now available in advance of the December 15, 2024, deadline.

19. Given the emerging conflict on an agreement to extend deadlines, on December 2, 2024 I served upon the Defendant the remainder of my intended fact discovery: requests for depositions of individual city agent, interrogatories, requests for production, and requests for admission.

20. I declare under penalty of perjury that everything I have stated in this declaration is true and correct to the best of my knowledge and recollection.

Signed in Hennepin County, Minnesota.

Dated: December 3, 2024

_____
KIRA A. KELLEY