## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CHERYL SAGATAW, et al. , | Case No. 24-cv-00001 (ECT/TNL) |
| Plaintiffs, | |
| vs. | |
| MAYOR JACOB FREY, *in his individual and official capacity* | **DEFENDANT MAYOR JACOB FREY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY THE COURT'S SCHEDULING ORDER** |
| Defendant. | |

Defendant Mayor Jacob Frey ("Defendant") respectfully submits this Memorandum of Law in Opposition to Plaintiffs' Motion to Modify the Court's Scheduling Order to allow Plaintiffs additional time to conduct fact discovery. This Motion must fail because Plaintiffs cannot meet the burden imposed on them by Fed. R. Civ. P 16(b)(4) to show good cause for the extension. The discovery completion deadline in this case is December 15, 2024. Prior to December 2, 2024, Plaintiffs had not served Defendant with *any* written discovery requests or deposition notices for individual fact witnesses. Plaintiffs had ten months to conduct discovery, and yet waited until nine business *days* before the discovery completion deadline to serve 10 multi-part requests for production of documents, 16 interrogatories, 23 requests for admission, and seven individual deposition notices. After Defendant objected to the discovery requests and Plaintiff's motion

was filed, with only five business days left before the discovery completion deadline, and with known scheduling conflicts, Plaintiffs served an eighth deposition notice. As outlined by the timeline below, far from showing the requisite good cause for an amendment, the record demonstrates a complete lack of diligence by Plaintiffs with their pattern of unjustified delay and a failure to timely act upon the information available to them early in this litigation. Consequently, Plaintiffs' motion must be denied.

## FACTS

**A.  Between June and September 2024, Defendant produced to Plaintiffs 462 videos and dozens of pages of documents and identified 27 City employees likely to have discoverable information.**

This case commenced on January 2, 2024. (ECF Doc. No. 1.) Counsel for the parties met on February 15, 2024, to prepare a Rule 26(f) Report, and the discovery period commenced as of that date pursuant to Fed. R. Civ. P. 26(d)(1). (ECF Doc. No. 60 at 1.) On March 7, 2024, this Court issued a Pretrial Scheduling Order holding that "fact discovery shall be commenced in time to be completed on or before December 15, 2024." (ECF Doc. No. 62 at 1, emphasis in original.)

On June 17, 2024, Defendant served Plaintiffs with Defendant's Initial Disclosures, which included a list of 27 City employees and officials likely to have discoverable information, including Chief of Police Brian O'Hara, Inspector Jose Gomez, Lieutenant John Haugland, and Director of Regulatory Services Enrique

2

Velasquez. (Declaration of Sharda Enslin ("Enslin Dec.") ¶ 2, Ex. A.)   On September 13, 2024, Defendant produced to Plaintiffs documents related to the encampment closures at issue, as well as 139 videos of encampment closures. (Enslin Dec. ¶ 3.)  On September 19, 2024, Defendant produced an additional 323 videos of encampment closures. (*Id.*)

### B.    The Parties discuss a 30(b)(6) deposition in July, August and September, and Defendant's counsel points out numerous times Plaintiffs' lack of written discovery.

On July 26, 2024, Plaintiffs' counsel emailed Defendant's counsel giving them a "heads up" that Plaintiffs were "working up a 'formal notice'" for a 30(b)(6) deposition and inquiring about the City attorneys' and the designee's availability. (Enslin Dec. ¶ 4, Ex. B.)   On July 31, 2024, defense counsel responded and encouraged Plaintiffs' counsel to proceed with serving their Notice of 30(b)(6) deposition, explaining that "without a topics list, it's pretty hard for me to determine how we would respond to it, who we might designate, and when they would be available." (Enslin Dec. ¶ 5, Ex. C.)

On August 12, 2024, Plaintiffs' counsel sent a "draft" Notice of 30(b)(6) Deposition with a corresponding list of 36 separate deposition topics. (Enslin Dec. ¶ 6, Ex. D.)  On August 26, 2024, Defendant served a Response to the draft Notice of 30(b)(6) Deposition, which included an itemized list of responses and objections to every topic. (Enslin Dec. ¶ 7, Ex. E.)  For 20 of the 36 topics proposed, Defendant

agreed to produce a witness, and objected to the remaining 16 topics. (*Id.*) Thirteen times, in his responses to the 30(b)(6) topics, Defendant objected on the basis that the proposed "topic" sought information that was more properly obtained through written discovery. (*Id.*)

On September 6, 2024, counsel for the parties met and conferred about the proposed 30(b)(6) topics. (Enslin Dec. ¶8.)  Counsel for Defendant once again brought up the fact that many of the topics were better suited for written discovery, a fact which Plaintiffs' counsel acknowledged. (*Id.*) The meet and confer was productive, and the parties reached agreement on a set of topics for the deposition, including an agreement by Plaintiffs' counsel to revise the topics to exclude information more properly sought through written discovery. (Enslin Dec. ¶9.)  Plaintiffs' counsel asked about when the deposition could take place, and defense counsel relayed that the deposition could take place the first week of October. (Enslin Dec. ¶10.)  A week later, on September 13, 2024, Plaintiffs' counsel circulated a new draft version of the 30(b)(6) topics highlighting the changes the parties had agreed upon and requested that Defendant's counsel contact them if the defense had questions about the revisions. (Enslin Dec. ¶11.)  Defendant's counsel did not have questions about the revisions. (*Id.*)

C.    **After the meet and confer, Plaintiffs inexplicably wait 11 weeks before attempting to schedule the 30(b)(6) deposition, with no mention of a need for additional discovery time.**

From September 13 to November 21, 2024, no notice of the 30(b)(6) deposition was served; in fact there was *no* communication whatsoever from Plaintiffs to Defendant about the 30(b)(6) deposition or any discovery. (Enslin Dec. ¶12.)  While the parties had tentatively agreed on the first week of October at the meet and confer, that time came and went without an attempt from Plaintiffs to schedule the deposition. (*Id.*) On November 21, 2024, *two and half months after their last email on the subject and 11 weeks after the parties discussed an early October deposition date*, Plaintiffs' counsel finally reached out to defense counsel in an attempt to schedule the deposition. (Enslin Dec. ¶13, Ex. F.)  On November 25, 2024, Defendant proposed the week of December 9-13 for the 30(b)(6) deposition. (Enslin Dec. ¶14, Ex. G.)  On November 26, Plaintiffs' counsel confirmed they were generally available that week. (Enslin Dec. ¶15, Ex. H.)

D.    **Plaintiffs seek to persuade Defendant to agree to a seemingly unnecessary multi-week "buffer period" for scheduling the 30(b)(6) deposition.**

The following day, on November 27, 2024, counsel for Defendant informed Plaintiffs that they had learned that City's 30(b)(6) designee was unavailable the week of December 9-13, but was available the following week on December 17 or 18. (Enslin Dec. ¶16, Ex. I.)  Defendant acknowledged that this was outside of the

5

discovery completion date of December 15, 2024; however, as this was only two or three days past the completion date and because the need to go outside of the deadline was due to the limited availability of the designee, Defendant offered to produce the witness after the deadline. (*Id.*)

In response, Plaintiff suggested that "the parties stipulate to an extension of the December 15th fact deadline by a few weeks just to give us all a buffer." (Enslin Dec. ¶17, Ex. J.) Defendant did not believe there was good cause to extend the discovery deadline by multiple weeks, given that the 30(b)(6) deposition, which was the only pending discovery, could be completed within three days of the original deadline. (*Id.*) Accordingly, counsel for Defendant responded that they would stipulate to a one-week extension until December 22, 2024. (Enslin Dec. ¶18, Ex. K.)

### E. **Plaintiffs reveal they actually proposed the "buffer period" to allow Plaintiffs to conduct all the discovery they had failed to conduct during the previous ten months.**

On November 29, 2024, Plaintiffs' counsel sent an email to Defendant's counsel rejecting Defendant's proposed one-week extension, stating that a "one-month stipulated extension (to Jan 15) seems appropriate and would give us some buffer in case the City representative has a conflict that comes up." (Enslin Dec. ¶19, Ex. L.) In this same email, Plaintiffs' counsel also brought up *for the first time in the litigation* an intention to serve interrogatories, requests for admission, and

other deposition notices, stating that their purported reason for not serving any other discovery to date was because they had "intended to give [Defendant] a good faith chance to settle." (*Id.*)

Plaintiffs' decision to delay conducting discovery had no connection to or foundation on the communications between the parties. (Enslin Dec. ¶20.) The parties had never discussed a stay of discovery for the purposes of settlement discussions. (*Id.*) After receiving this email, Defense counsel recognized that Plaintiffs intended to use their proposed one-moth "buffer" period as a way to conduct discovery that would otherwise be untimely. (*Id.*)

On December 2, 2024, defense counsel learned that the City's 30(b)(6) designee was now available to sit for a deposition on December 10, 2024, a date within the original discovery completion deadline. (Enslin Dec. ¶21.) Defendant's counsel informed Plaintiff's counsel via email about the availability of the 30(b)(6) designee, and that there was no longer a need for any extension of the December 15, 2024, discovery completion deadline. (Enslin Dec. ¶22, Ex. M.) Plaintiff's counsel responded by stating that despite the fact that the witnesses was now available within the discovery period, they would still be bringing a motion to extend fact discovery. (Enslin Dec. ¶23, Ex. N.)

**F.** **At the eleventh hour, and after conducting no discovery for ten months, Plaintiffs bombard Defendant with a slew of untimely discovery, including 10 requests for production of documents, 16 interrogatories, 23 requests for admission, and notices for eight individual depositions.**

At 4:06 p.m. on Monday, December 2, 2024, nine business days before the close of discovery, Plaintiffs served Defendant with the deposition notices for the following individuals:

- Defendant Jacob Frey, Mayor of Minneapolis;

- Brian O'Hara, Chief of Minneapolis Police Department;

- Toddrick Barnette, Commissioner of Minneapolis Department of Public Safety;

- Enrique Velazquez, Director of Minneapolis Department of Regulatory Services;

- John Haugland, Minneapolis Police Department Lieutenant;

- Jose Gomez, Minneapolis Police Department Inspector;

- Michael Ohama, Senior Policy Aid, Public Safety, Mayor's Office.

(Enslin Dec. ¶¶24-31 Exs. O-U.)

None of the deposition notices identified a time or date for the deposition. (*Id*.)  In that same email, Plaintiffs also served Defendant with 10 broad requests for production of documents, 16 interrogatories, and 23 requests for admission. (Enslin Dec. ¶32, Ex. V.)  The following day, December 3, 2024, after multiple requests from Defendant, Plaintiffs served *for the first time* a Notice of 30(b)(6)

deposition with a time and date. (Enslin Dec. ¶33, Ex. W.) Several days later, on the afternoon of Friday December 6, 2024, Plaintiff served another individual deposition, this one for Minneapolis City Council Member Jason Chavez. (Enslin Dec. ¶34, Ex. X.) Similar to the others, there was no time or date on the deposition notice. (*Id.*)

## **ARGUMENT**

The Court's Pretrial Scheduling Order holds that "fact discovery shall be <u>commenced in time to be completed</u> on or before December 15, 2024." (ECF Doc. No. 62, emphasis in original.) Pursuant to the Federal Rules of Civil Procedure, Defendant has 30 days after service to respond to each of the written forms of discovery served by Plaintiffs, which would mean that the latest any document request, interrogatory, or request for admission could have been served and still be deemed timely was November 15, 2024. Fed. R. Civ. P. 34(b)(2)(A) (document requests); Fed. R. Civ. P. 33(b)(2)(interrogatory); Fed. R. Civ. P. 36(a)(3) (requests for admission). Plaintiffs did not send any document requests, interrogatories, or requests for admission to Defendant until December 2, 2024, more than three weeks late. By failing to act, Plaintiffs have forfeited the ability to obtain written discovery from Defendant, as they have not articulated any legally acceptable reason for their lack of diligence.

Fed. R. Civ. P. 30(b)(1) provides that a party who wants to depose a person must give "reasonable written notice" to the other party, including the time and date of the deposition. Here, mere days from the close of discovery, Plaintiffs served Defendant with eight new deposition notices none of which included a date for the depositions. By failing to provide Defendant with reasonable notice of these depositions, Plaintiffs have forfeited the ability to conduct them, as they have not articulated any legally acceptable reason for their lack of diligence.

### A.   Plaintiffs Must Demonstrate Good Cause to Extend the Deadline for Fact Discovery.

Plaintiffs' motion should be denied because it fails to establish the requisite good cause for amending the Scheduling Order to extend fact discovery. The Federal Rules of Civil Procedure provide that a court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also* L.R. 16.3 (requiring good cause for proposed modification and an explanation as to why not all discovery has been completed). The application of the Rule 16(b) good cause standard is not optional. *See Lollie v. Johnson*, 2016 WL 447452, at *15 (D. Minn. Feb. 4, 2016); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) party *must* show good cause to modify the schedule)(citing to *Popoalii v. Corr Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). To permit district courts to consider motions without regard to Rule 16(b) "would render scheduling orders meaningless and effectively ... read Rule 16(b) and its good cause

requirement out of the Federal Rules of Civil Procedure." *Sherman.*, 532 F.3d at 716 (quotation omitted).

**B.    Plaintiffs Have Not Diligently Pursued Discovery.**

The good cause standard is exacting. *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000). "The focus of this exacting test is on the diligence with which the moving party attempted to comply with the scheduling order's deadlines, and not on the prejudice to the non-moving party." *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F.Supp.2d 999, 1006 (D. Minn. 2013); *see also Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) ("The primary measure of good cause is the movant's diligence in attempting to meet the orders' requirements.") "It hardly bears mention, therefore, that 'carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'" *Scheidecker*, 193 F.R.D. at 631-32. Plaintiffs offer a myriad of excuses for their lack of diligence, none of which can withstand even a basic level of legal scrutiny.

**1. Plaintiffs' argument that they could not conduct discovery while preparing an amended complaint is without merit.**

Plaintiffs' counsel argues that their efforts spent preparing an amended complaint and dealing with the requests for representation made by potential new plaintiffs filed with this Court on July 9, 2024, justifies their failure to serve discovery that complies with the December 15, 2024, deadline. This argument fails as a matter of law. First, Plaintiffs' diligence is measured during the entirety

11

of the discovery period. *Alexander v. 1328 Uptown, Inc.*, No. 18-CV-1544 (ECT/ECW), 2019 WL 9514655, at *3 (D. Minn. June 20, 2019) (movant had not shown diligence "particularly when [movant] did not serve any discovery at all for several months after the Rule 26(f) report."). The discovery period commenced on February 15, 2024, nearly five months before the issue of prospective plaintiffs arose, and Plaintiffs' counsel sought no written discovery or depositions of individual fact witnesses during that period. Plaintiffs ultimately filed a motion to amend their complaint to add new plaintiffs on September 24, 2024. Accordingly, *at most* Plaintiffs completed the addition of new plaintiffs and the subsequent motion to amend their complaint in approximately two and a half months. Still, Plaintiffs did not attempt to serve written discovery or depositions notices for individual witnessed for more than two months *after* the amendment. Even if amending the complaint took two months of counsel's time, the discovery period was comprised of *ten* months.

Plaintiffs offer no justification as to why they did not serve discovery between February 15, 2024, and July 9, 2024. Plaintiffs were in possession of Defendant's initial disclosures as of June 17, 2024, which identified 27 potential witnesses, including many of the witnesses Plaintiff now seeks to depose. The certainly knew of Mayor Frey's identity at the outset of the case, having named him as a party. Caselaw directs that Plaintiffs who cannot account for a failure to

be diligent earlier in the discovery period cannot show good cause when an obstacle comes up later in the discovery period. *See Foster v. Litman*, No. 19-CV0260 (JNE/ECW), 2020 WL 4548281, at *3–4 (D. Minn. Aug. 6, 2020) (COVID was not good cause for extension when Plaintiff had taken no discovery between January and March before COVID locked down his prison facility); *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 0:18-CV-1253(SRN-KMM), 2020 WL 6262378, at *2–3 (D. Minn. May 6, 2020) (party who had taken no action to secure an international deposition during the discovery period because it was costly could not show good cause for an extension when another witness turned out to not recall information they wanted). Plaintiffs' failure to be diligent, by conducting no discovery during the first five months that discovery was open means that they have failed to show good cause to extend the deadlines in this matter.

Secondly, Plaintiffs fail to offer any justification as to why, after the motion to amend the complaint was filed on September 24, 2024, they still waited more than two *additional* months to serve discovery. As of September 24, 2024, all new Plaintiffs had been identified, representation had been retained, a motion to file an amended complaint had been filed, and still Plaintiffs sat on serving written discovery and deposition notices until December 2, 2024. This demonstrates a further lack of diligence.

Moreover, notwithstanding the fact that Plaintiffs had ample time before and after amending their complaint to conduct discovery, Plaintiffs' argument that they could not possibly have engaged in discovery during the approximately two and a half months they theoretically spent amending the complaint is equally without merit. Plaintiffs' counsel argues that from July to September 2024, they were unable to serve discovery because they were purportedly tied up trying to reach potential new plaintiffs. (ECF Doc. No. 110 (Kelley Decl.) at ¶¶ 5-9.) This included writing letters, making calls, and apparently spending "several dozen hours in August and September sitting in or near various encampments in East Phillips with a sign that said, "Ask Me About the Nenookaasi Lawsuit."(*Id.* at ¶ 8.) The decision by Plaintiffs' counsel to expand the number of plaintiffs, rather than discovering information from the opposing party was a tactical choice made by Plaintiffs as to how they wanted to spend their time and resources in this litigation. When a litigant has a reasonable opportunity develop their case within the deadlines of a pretrial scheduling order, the litigant's failure to do so demonstrates lack of diligence *regardless* of whether the failure resulted from a tactical decision or neglect. *See, e.g.*, *Albright v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) (observing that the counsel's busy work schedule did not excuse lack of diligence when plaintiff missed dispositive motion filing deadline); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759-60 (8th Cir.

2006) (holding that "tactical decision[s]" do not provide good cause to modify a scheduling order) (citation omitted). It is incumbent on Plaintiffs to manage their tactical decisions with the time constraints of the case. That they chose to prioritize other aspects of the litigation over serving any document requests, interrogatories, requests for admission, or individual deposition notices does not evince diligence in complying with the Court's Scheduling Order deadlines.

Furthermore, Plaintiffs' contention that they could not pursue amending the complaint and simultaneously conduct discovery because of the size of their legal team is also unpersuasive. Plaintiffs cite no legal support for the contention that the size of a legal team, especially one that Plaintiffs acknowledge includes three attorneys, gives way to good cause to amend a Scheduling Order.  If anything, it appears that there were other attorneys that could have been drafting and serving discovery while lead counsel sat by a sign at encampments.  Indeed, Plaintiffs' purported justification is the type of "unpersuasive excuse[ ], inclusive of inadvertence and neglect, which commonly undergird[s]" a motion to amend. *Scheidecker*, 193 F.R.D. at 632 n.1 (citations omitted). Plaintiffs cannot establish a good faith basis that their work on the amended complaint precluded them from conducting discovery, and for that reason the motion to must be denied.

### 2. The scheduling of the completed 30(b)(6) deposition does not constitute good cause to open the door for untimely discovery by Plaintiffs.

Plaintiffs argue that Defendant delayed the 30(b)(6) deposition until December 10, 2024, and as a result, Plaintiff should be allowed to extend the December 15, 2024, discovery deadline. This argument fails for multiple reasons.

First, as outlined at length above, any delay in scheduling the 30(b)(6) deposition is solely a result of the Plaintiffs' lack of diligence. In early September 2024, the parties agreed on a list of deposition topics and timeframe for the 30(b)(6) deposition to take place in early October. Nonetheless, from September 13, 2024, to November 21, 2024, a period of two and a half months, Plaintiffs made no attempt to schedule the deposition. Plaintiffs inexplicably appear to argue that during that time, defense counsel should have scheduled the deposition on Plaintiffs' behalf. This argument fails. Parties have the burden of pursuing their own discovery. *Wipers Recycling, LLC v. City of Maplewood*, No. 08-5019 (PJS/AJB), 2010 WL 11469954, at *8 (D. Minn. Oct. 10, 2010). Plaintiffs' failure to take any proactive steps to schedule the deposition for over two and half months demonstrates a lack of diligence. In fact, proper notice of the 30(b)(6) deposition, with a time and date, was not served until December 3, 2024, only *after* multiple prompts from defense counsel.

Moreover, even if the Court concludes that the Plaintiffs were diligent in their efforts to schedule the 30(b)(6) deposition, nothing about the scheduling or taking of the 30(b)(6) deposition gives rise to good cause for an extension of the fact discovery deadline for other discovery to be conducted. The 30(b)(6) deposition was completed on December 10, 2024. (Enslin Decl. ¶35.) Accordingly, Plaintiffs do not need an extension of time to conduct that deposition.

Instead, Plaintiffs once again look to their own misguided tactical decisions to justify an extension of the discovery deadline. According to Plaintiffs' counsel, they did not conduct any discovery prior to December 2, 2024, because it was their "understanding that it is common practice to depose the entity first, as a preliminary matter, and that both parties submit written discovery requests and schedule depositions of individuals afterwards, as informed by the initial organizational deposition." (ECF Doc. No. 110 (Kelley Dec.) at ¶17). Plaintiffs cite no law or rules in support of this conclusion, and incidentally this is the opposite of what defense counsel has experienced as common practice, which is that the 30(b)(6) deposition is typically taken after all other written discovery and fact depositions have been conducted. Even it if was the normal practice to take a 30(b)(6) deposition first, that would have been all the more reason to work diligently to schedule the deposition, but Plaintiffs waited on scheduling for months. Regardless, Plaintiffs' decision to forego any other discovery until after

17

the 30(b)(6) deposition was completed is a tactical decision that cannot justify a motion to extend the discovery deadline. A strategic decision to prioritize one type of discovery over another does not amount to diligence, "particularly when [the party] did not serve any discovery at all for several months after the Rule 26(f) reports." *Alexander,* 2019 WL 9514655 at *3; *see Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 06-cv-4112 (ADM/JSM), 2009 WL 10677527, at *13 (D. Minn. Feb. 9, 2009); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 09-cv-1091 (JNE/JSM), 2010 WL 4193076, at *7 (D. Minn. Oct. 7, 2010); *see also Marmo*, 457 F.3d at 759–60 (observing that the plaintiff had "ample opportunity to develop her expert testimony on the causation issue" and her "tactical decision" as to this issue did not demonstrate good cause to amend the pretrial scheduling order). There is no dispute that Plaintiffs made a tactical decision to wait ten months to serve any document requests, interrogatories, requests for admission, or individual deposition notices. These are not the actions of a party acting diligently, and any argument to the contrary by Plaintiffs must be rejected.

### 3. Plaintiffs' unilateral decision to forego discovery in the hopes of settlement cannot be the basis for an extension of the discovery deadline.

Another reason Plaintiffs give for serving untimely discovery requests is that "Plaintiffs' counsel had been attempting to pursue settlement negotiations."

(Pl. Mem., ECF Doc. No. 109, p. 4.) This excuse, however, does not give rise to good cause for an extension of the discovery deadline.

Plaintiffs do not even attempt to argue that there was any sort of agreement between the parties to pause discovery in order to engage in settlement discussions. There was not. (Enslin Decl. at ¶36.)  Rather, Plaintiffs made this decision unilaterally. The fact that Plaintiffs wanted to wait to see if settlement negotiations would be successful before proceeding with discovery is another tactical decision, which as discussed above does not amount to diligence for the purposes of good cause under Rule 16. *See Architectural BusStrut Corp. v. Target Corp.*, No. 19-CV-968 (DSD/ECW), 2021 WL 2646808, at *6 (D. Minn. Mar. 8, 2021) ("the fact that ABC chose to delay discovery in this case based on a possible settlement or coordination of discovery is a 'tactical decision' that does not provide sufficient good cause to modify a pretrial scheduling order under Rule 16."); *See also Grage v. N. States Power Co.*, No. CV 12-2590 (JRT/JSM), 2014 WL 12610147, at *7 (D. Minn. Jan. 3, 2014) ("Likewise, the fact that Grage may have delayed pursuing the motion to amend because of settlement talks was at a best a tactical decision, which does not amount to good cause so as to allow any relief on her motion to amend.") (citation omitted). Accordingly, Plaintiffs' decision not to conduct discovery while pursuing settlement negotiations cannot establish good cause for a motion to extend the discovery deadline.

**C.      Answering Plaintiffs' untimely discovery requests and conducting Plaintiffs' untimely depositions would be prejudicial to Defendant.**

While it is not necessary to reach the question of prejudice to the Defendant, because Plaintiffs have failed to demonstrate any diligence in pursuing discovery, the simple fact is that Defendant would be prejudiced. *See Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2015); *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2021). The very act of responding to discovery requests, which should have been cut off by the operation of the scheduling order, is prejudicial. *See Kmak v. Am. Century Companies, Inc.*, 873 F.3d 1030, 1034–35 (8th Cir. 2017)(denying leave to amend a scheduling order and noting it would cause prejudice to non-moving party as it would cause the party "to incur new rounds of additional and costly discovery"); *Cardiovascular Sys., Inc.,* 2020 WL 6262378, at *2–3 (D. Minn. May 6, 2020) (finding additional discovery a source of prejudice to the non-moving party). The discovery requests are extensive and include 10 broad requests for production of documents, 16 interrogatories, 23 requests for admission,  and eight individual deposition notices. Pursuant to the Scheduling Order, Plaintiffs only have a total of 12 depositions, 30 document requests, 30 interrogatories, and 35 requests for admission. (ECF Doc. 62.) Accordingly, Plaintiffs intend to use over two thirds of what was their total allotted discovery in the case *after* the discovery deadline has passed. Essentially, Plaintiffs are requesting to begin an extensive discovery process against Defendant for the first time, after sitting on their hands for ten

months. The time and expense of responding to Plaintiffs' discovery is not negligible. This is particularly true with respect the depositions, which would consist of eight days of depositions for high-level officials that would otherwise be dedicated to serving the City, and likely another eight days of preparation with the same, all without any explanation of how the witnesses are necessary after the City's 30(b)(6) deposition on an extensive topic list has been completed. This is highly prejudicial to Defendant and Plaintiffs' motion should be denied.

## CONCLUSION

The record shows unequivocally that Plaintiffs have failed to diligently pursue discovery, foreclosing any basis to extend the discovery deadlines in this case. Defendant respectfully requests that the Court deny the Plaintiffs' motion to amend the Scheduling Order.

Dated:  December 10, 2024                    KRISTYN ANDERSON
                                            City Attorney
                                            By */s Sharda Enslin*
                                            SHARDA ENSLIN (#389370)
                                            KRISTIN R. SARFF (#388003)
                                            HEATHER P. ROBERTSON (#390470)
                                            J. HAYNES HANSEN (#399102)
                                            Assistant City Attorneys
                                            Minneapolis City Attorney's Office
                                            350 South Fifth Street, Room 210
                                            Minneapolis, MN 55415
                                            (612) 673-2180
                                            (612) 673-3919
                                            (612) 299-2742
                                            (612) 673-3339

sharda.enslin@minneapolismn.gov
kristin.sarff@minneapolismn.gov
heather.robertson@minneapolismn.gov
haynes.hansen@minneapolismn.gov

*Attorneys for Defendant Mayor Jacob Frey*