UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cheryl Sagataw, DeAnthony Barnes, Roberta Strong, Travis Neloms, Alvin Butcher, Adrian Tiger, Chance Askenette, Deven Caston, Lola Hegstrom, and RonDel Applebee, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>Mayor Jacob Frey, *in his individual and official capacity,*<br><br>Defendant. | Case No. 24-cv-0001 (ECT/TNL)<br><br>PLAINTIFFS' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION |

TO: DEFENDANT MAYOR JACOB FREY IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, ℅ MINNEAPOLIS CITY ATTORNEY'S OFFICE

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiffs Cheryl Sagataw, DeAnthony Barnes, Roberta Strong, Travis Neloms, Alvin Butcher, Adrian Tiger, Chance Askenette, Deven Caston, Lola Hegstrom, and RonDel Applebee, on behalf of themselves and the putative class of those similarly situated, ("Plaintiffs") hereby submit the following Interrogatories, Requests for Production, and Requests for Admission to Defendant. Plaintiff requests that Defendant serve its answers, in writing and under oath, to the undersigned counsel for Plaintiffs at P.O. Box 7040; Minneapolis MN 55407 or by electronic mail, within 30 days of service of these Interrogatories and Requests. The requests for production of documents are exclusive of any materials already provided by the City.

I. Definitions:

For the purpose of this discovery request only unless otherwise specified, Plaintiffs use the following definitions:

1

Exhibit V

1. "Communication" means any written, oral, telephonic, or electronic conveyance of meaning between or among one or more persons or entities.

2. "Document" means any written, recorded, or graphic material of any kind, whether prepared by you or by any other person, that is in your possession, custody, or control, including: agreements, contracts, letters, telegrams, inter-office communications, memoranda, reports, records, instructions, specifications, notes, notebooks, scrapbooks, diaries, plans, drawings, sketches, blueprints, diagrams, photographs, photocopies, charts, graphs, descriptions, drafts (whether or not they resulted in a final document), minutes of meetings and other conversations, invoices, purchase orders, bills of lading, recordings, published or unpublished speeches or articles, publications, transcripts, voicemails, electronic-mail, text messages, ledgers, financial statements, microfilm, microfiche, tape or disc recordings, and computer print-outs. This also includes all drafts of a document and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

3. "Encampment" means a grouping of tents, tent-like structure(s), or temporary structures that are located within Minneapolis, which appear to be occupied by individual(s) for the purposes of residing therein.

4. "Eviction" means the closure and clearing of an encampment site at the direction of the City of Minneapolis.

5. "Nenookaasi" refers to the encampment of unhoused individuals that was located at the following approximate location on the following dates:

Exhibit V

      a. From August 23, 2023 until January 4, 2024: at or near 2313 13th Ave S.
      b. From January 4 to January 30, 2024: at or near 2601 14th Ave S.
      c. From January 30 to February 1, 2024: at or near 2213 16th Ave S.
      d. From February 1 to February 29, 2024: at or near 1105 E 28th St.
      e. From February 29 to July 25, 2024: at or near 2839 14th Ave S.

6. "Relating to" means analyzing, alluding to, containing, constituting, considering, comprising, commenting on, concerning, discussing, describing, mentioning, pertaining to, referring to, reflecting, regarding, studying, or reporting on, in whole or in part.

7. "You" and "Your" is in reference to yourself, as an individual, as well as to the City of Minneapolis.

8. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

II.   <u>Instructions:</u>

1. Unless otherwise specified, these requests are limited to the time period beginning August 1, 2023 to the present, with ongoing supplements and corrections made pursuant to Rule 26(e) of the Federal Rules of Civil Procedure as additional information becomes known.

2. Where knowledge, information, or documents are requested, such request encompasses knowledge, information or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

Exhibit V

3. Pursuant to Fed. R. Civ. P. 26(e), you are under a duty seasonably to amend any answer to these interrogatories for which you learn that the answer is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to us during the discovery process or in writing.

4. For any request or interrogatory which you refuse to answer in full or in part under a claim of privilege, submit a sworn or certified statement in which you identify the nature of the information withheld; specify the grounds of the claimed privilege and the paragraph of these interrogatories to which the information is responsive; and identify each person to whom the information, or any part thereof, has been disclosed.

5. Answer each interrogatory or request fully. If you object to any interrogatory or request, state the reasons for objection and respond to the extent the interrogatory or request is not objectionable. If you are unable to answer an interrogatory or request fully, submit as much information as is available, explain why your answer is incomplete, and identify all other sources of more complete or accurate information.

6. For any record or document responsive or relating to these interrogatories or requests which has been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter. Explain in detail the reason for the unavailability of any such document.

III.  INTERROGATORIES:

1. Identify the names, positions, and addresses of any individual or entity who has the authority to make decisions during encampment evictions about who may or may not enter the perimeter and for what reason, and how much time residents are given to gather their belongings.

Exhibit V

2. State the names, addresses, and positions of people or entities who both (1) communicate with you regarding matters of homelessness and/or encampment evictions (exclusive of individuals who may provide you with their opinion on such matters, but to whom you do not grant an audience) and also who (2) contribute financially to your campaign or to the City of Minneapolis.

   a. Provide the amount and dates of those contributions and the content, manner, and dates of those communications.

3. State your position, with specificity, on where encampment residents and their belongings should go after being evicted.

4. State your understanding of the comparative dangers of unsheltered houselessness when a person is living in an encampment as opposed to when a person is not in an encampment.

5. State your general understanding of the history of Minnesota and the process by which its original Indigenous inhabitants were driven off their homelands.

6. State the sources of data (reports, individual persons, consultants, experts, organizations, statistics, and any other research product) that you have reviewed and/or relied on when designing or approving policy regarding unhoused Minneapolitans and/or houseless encampments.

7. Itemize the City's expenditures from the time period of August 2023 to the present on encampment response, including supportive services (e.g., porta-potties, security) and evictions (e.g., law enforcement, fencing, rubble deposits).

8. Describe the basis for the decision to award Helix Health and Housing Services a no-bid contract for the provision of services to unhoused Minneapolitans, including any current or prior connections to that organization or its executives or directors.

Exhibit V

9. State your understanding, and the source of this understanding, of the number of initial unhoused residents of Nenookaasi who were able to access services and transition from Nenookaasi into treatment and/or housing programs during the period of its formation until its first eviction on January 4, 2024.

10. Describe the "encampment closure process" and what happens to individuals and their belongings during an eviction, including whether and how individuals are provided an opportunity to gather their belongings, whether and under what circumstances individuals are prohibited from gathering their belongings, and what happens to any belongings that remain on site during an eviction.

11. Describe the details of any storage opportunities provided to Nenookaasi residents, including the specific dates and times that storage was made available, the nature of that storage, and how and by whom the availability of storage was communicated to residents.

12. Describe the details of how notice of evictions was provided to residents, including who provided notice, to whom it was provided, whether and where any notices were posted and the exact verbiage of any signage.

13. Describe, for each eviction of Nenookaasi, the specific reason the decision was made to evict residents and what source or sources of information led to that decision.

14. Describe the date, time, and location of any visits you personally have made during your tenure as Mayor to a houseless encampment.

   a. If you made any such visits, describe the number, nature, and parties to any conversations you had while visiting any such encampment.

15. Describe the date, time, purpose, and location of any visits you have personally made during your tenure as mayor to an organization or entity that provides services to unhoused

Exhibit V

Minneapolitans, such as Avivo, Agate, Helix, or the storage facilities offered by the Downtown Improvement District.

16. Identify all persons who participated in the preparation of responses to each of these interrogatories, requests for production, and requests for admission.

IV. <u>REQUESTS FOR ADMISSIONS</u>:

Plaintiffs request that Defendant Frey make the following admissions for the purpose of this action only and subject to all pertinent objections to admissibility which may be interposed at the trial. Please Admit or Deny that the Following Statements are true:

1. Providing basic resources (sanitation stations, trash pickup, social and medical services) to encampments more effectively reduces homelessness than repeated evictions and sweeps.

2. Evictions cause trauma to the encampment residents who experience them.

3. Repeated encampment evictions make it more difficult for evicted residents to maintain contact with their social and case workers, counselors, lawyers, housing workers, and other social service providers and vice versa.

4. Unhoused women are disproportionately vulnerable to sex trafficking compared to their housed counterparts.

5. Unhoused people are disproportionately the victims of violent crime and theft.

6. All land currently owned by the City of Minneapolis first belonged to the original Indigenous (Dakota) inhabitants of this region.

7. The land that is now the City of Minneapolis, including land owned by the City itself, was stolen from its original Dakota occupants through the ongoing process of colonization.

8. The majority of the residents of Nenookaasi are Indigenous and/or people of color.

Exhibit V

9. Many of the residents of Nenookaasi are physically and/or mentally disabled, such as through physical mobility limitations, substance use disorders, anxiety, depression, and Post-Traumatic Stress Disorder (PTSD).

10. Law enforcement are not required to answer direct clarifying questions during evictions about what is or is not allowed, and where services may be obtained.

11. Law enforcement are not required to allow individuals to make multiple trips in and out of the encampment to retrieve their belongings during evictions.

12. Law enforcement are not required to allow supporters and service providers to move freely during evictions to assist with encampment residents' moving.

13. Evictions are planned and intended to occur at days and times where fewer non-encampment residents will be on site.

14. Helix Health and Housing Services was awarded a no-bid contract that was framed as providing support for former residents of Nenookaasi.

15. After January 4, 2024, Nenookaasi residents were not given notice of specific dates for eviction.

16. Storage was not made available to Nenookaasi residents on January 4, 2024.

17. Storage was not made available to Nenookaasi residents on January 30, 2024.

18. Storage was not made available to Nenookaasi residents on February 1, 2024.

19. Minneapolis police department officers have ignored requests for law enforcement response and/or emergency services made by Nenookaasi residents.

20. On January 4, 2024, there were an insufficient number of available shelter beds to house the evicted residents of Nenookaasi.

Exhibit V

21. On January 30, 2024, there were an insufficient number of available shelter beds to house the evicted residents of Nenookaasi.

22. On February 1, 2024, there were an insufficient number of available shelter beds to house the evicted residents of Nenookaasi.

23. On July 25, 2024, there were an insufficient number of available shelter beds to house the evicted residents of Nenookaasi.

V. REQUESTS FOR PRODUCTION:

1. Communications received, reviewed, sent, created, drafted, or discussed by the City regarding houseless encampments, including support for, responses to, and evictions of encampments as well as activities meant to deter future encampments from forming, such as the depositing of rubble on city-owned lots.

2. Documents relating to the manner in which notice was given of each eviction of Nenookaasi (as defined in Section I(5), above), including copies or photos of signs and communications regarding the location, date, and contents of signage.

3. Documents relating to storage that was offered or provided to Nenookaasi residents.

4. Documents relating to property destruction and removal following the evictions of Nenookaasi residents, including those containing any inventories or descriptions of items destroyed and any related invoices or fees for services.

5. Documents relating to complaints, 911 calls, and requests for service related to Nenookaasi and any other documents relating to the Defendant's claim that the City had received approximately 100 requests for emergency services in the first four months of the Camp's existence, including requests originating from Nenookaasi residents themselves.

Exhibit V

6. Documents relating to the City's efforts to investigate or substantiate complaints against Nenookaasi and its residents.

7. Property records for each location from which Camp Nenookaasi was evicted.

8. Documents relating to the provision and servicing of portapotties at Nenookaasi.

9. Documents relating to the availability and accessibility of shelter beds on the dates of the Nenookaasi evictions.

10. The contract between Minneapolis and Helix Health & Housing Services described by the City Council approval as: "The Minneapolis City Council hereby authorizes a contract with Helix Health & Housing Services using Opioid Settlement Funds, in the amount of $999,650 to provide temporary housing, substance use disorder treatment, and mental health services for individuals experiencing homelessness."

Dated: December 2, 2024

s/*Kira Kelley*
Kira Kelley (#402932)
Climate Defense Project
P.O. Box 7040
Minneapolis, MN 55407
Phone: (802) 683-4086
Email: kira@climatedefenseproject.org

**ATTORNEY FOR PLAINTIFFS**

Exhibit V