# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

CHERYL SAGATAW, DEANTHONY BARNES, ROBERTA STRONG, TRAVIS NELOMS, ALVIN BUTCHER, ADRIAN TIGER, CHANCE ASKENETTE, DEVEN CASTON, LOLA HEGSTROM, and RONDEL APPLEBEE, *on behalf of themselves and a class of similarly-situated individuals*,

                             Plaintiffs,

      vs.

MAYOR JACOB FREY, *in his individual and official capacity*,

                             Defendant.

Civil Action

0:24-cv-00001-ECT/TNL

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(A) & 23(B)(2)**

---

## TABLE OF CONTENTS

**I. INTRODUCTION**..................................................................................**1**

**II. PROPOSED CLASS AND RELIEF REQUESTED**.............................. **2**

**III. ARGUMENT**....................................................................................**3**

    A. The Proposed Class Satisfies the Requirements of Fed. R. Civ. P. 23(a)........4

        1. Numerosity.............................................................................. 4

        2. Commonality............................................................................ 8

        3. Typicality............................................................................... 11

        4. Adequacy............................................................................... 13

        5. Ascertainability..................................................................... 16

    B. The Proposed Class Satisfies the Requirements of Fed. R. Civ. P. 23(b)(2).... 17

**IV. CONCLUSION**................................................................................ **18**

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ............ 11

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d
763 (8th Cir. 1971)................................................................... 5

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*,
281 F.R.D. 347 (D. Minn. 2012)............................................... 13

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) ........... 9, 11, 17

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977)................... 11

*Duffek v. iMedia Brands, Inc.*, No. 21-CV-01413, 2022 WL 2384171
(D. Minn. July 1, 2022)............................................................ 4

*Elizabeth M. v. Montenez*, 458 F.3d 779 (8th Cir. 2006)..................... 12

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014)........................ 16

*General Telephone Co. of Southwest v. Falcon*, 457 U.S.147 (1982)... 12

*Glenn v. Daddy Rocks*, 203 F.R.D. 425 (8th Cir. 2001)....................... 5

*Ihrke v. N. States Power Co.*, 459 F.2d 566 (8th Cir. 1972)................. 16

*In re Nat'l Hockey League Players' Concussion Injury Litig.*, 327
F.R.D. 245 (D. Minn. 2018)...................................................... 3

*Kincaid v. City of Fresno*, 244 F.R.D. 597 (E.D. Cal. 2007)................ 8

*Lockwood Motors, Inc. v. Gen. Motors, Inc.*, 162 F.R.D. 569 (D.
Minn. 1995)........................................................................... 4

*Love v. City of Chicago*, Case No. 96-C-396, 1997 WL 120041 (N.D.
Ill. Mar. 11, 1997).................................................................. 8

*Lyall v. City of Denver*, 319 F.R.D. 558 (D. Colo. 2017)..................... 8

*Paxton v. Union Nat. Bank*, 688 F.2d 552 (8th Cir. 1982)................... 17

*Postawko v. Missouri Dept. of Corrections*, 910 F.3d 1030 (8th Cir. 2018)................................................................................ *passim*

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992 (8th Cir. 2016)............................................................................ 8, 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)......................... 4, 9, 17

**Rules**

Federal Rule 23 of Civil Procedure .................................................... *passim*

# I.   INTRODUCTION

Houselessness is a widespread and pervasive problem throughout the United States, but a unique situation arose in the late summer of 2023 with the formation of an intentional community bent on breaking the cycle and beating the odds. Camp Nenookaasi formed as a discrete cohort of individuals who created transformative temporary stability for each other. Many of this cohort found housing thanks to the opportunities for connection, care, and consistent contact with housing and support workers. For those who could not make progress fast enough, the results have been predictably tragic.

The City evicted Nenookaasi from four locations over a period of approximately eight months, causing spiritual, emotional, physical, and property damage to the residents who were forced to relocate over and over again in the same approximately half-mile radius. Each eviction stripped residents of their life-saving and sacred belongings, their safety, their dignity, and their connections and progress towards becoming housed. Each eviction has violated the basic constitutional rights of residents.

Like the acts of survival this group has undertaken, like their journeys towards sobriety and healing, and like their decision to form an encampment committed to helping one another, this lawsuit from the beginning has been a communal effort. This filing seeks formal recognition of that reality.

1

## II.    PROPOSED CLASS AND RELIEF REQUESTED

Here, Plaintiffs Cheryl Sagataw, DeAnthony Barnes, Roberta Strong, Travis

Neloms, Alvin Butcher, Adrian Tiger, Chance Askenette, Lola Hegstrom, RonDel

Applebee, and Deven Caston[1] seek to certify and represent the following Injunctive

Relief Class ("Class") under Fed. R. Civ. P. 23(b)(2), defined as:

> **People who, while experiencing unsheltered houselessness, found a temporary home at and experienced an eviction from Camp Nenookaasi on one or more of the following dates:**
>
> a.  January 4, 2024 (evicted from 23rd Street and 13th Avenue);
>
> b.  January 30, 2024 (evicted from 2601 14th Street);
>
> c.  February 1, 2024 (evicted from 2213 16th Avenue);
>
> d.  July 25, 2024 (evicted from 2839 14th Avenue).

Plaintiffs note that Nenookaasi was also located on the 1100th block of 28th

Street East, from February 1, 2024 until a tragic fire on February 29, 2024, but

Plaintiffs do not consider the fire to be an eviction for the purposes of this class

definition.

Plaintiffs seek relief in the form of an order of this Court directing the

Defendants to honor the constitutional rights of the Injunctive Relief Class with

respect to protection from unconstitutional property seizures, mandates of due

process for any property and home destruction, and adequate and accessible

---

[1] Counsel is devastated to report that Plaintiff Deven Caston died late last year. A Notice of Death has been filed this same day. More should be said about Deven, his life, his death, and the tragedy of this senseless loss, but this filing is not the time or the place. May he rest in peace.

alternatives for storage and residence. Plaintiffs seek an injunction from their own repeated disposal as human beings. The solution to a houseless epidemic is not to sweep people like dirt from one street to another but to work together to move people off the streets entirely.  Mayor Frey's commitment to the former is not only bad policy—it is illegal.

## III.    ARGUMENT

To represent a class, representative parties must comply with Federal Rule of Civil Procedure 23. The representatives must show that the proposed class meets the preliminary requirements in Rule 23(a) and fits one of the categories in Rule 23(b). *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 327 F.R.D. 245, 255 (D. Minn. 2018). The merits of plaintiffs' case are relevant only to the extent that they relate to the Rule 23 prerequisites: when presented with a motion to certify a class, a court's "primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Postawko v. Missouri Dept. of Corrections*, 910 F.3d 1030, 1037 (8th Cir. 2018).

Here, the proposed represented class is a group of approximately 100 people who experienced one or more of the discrete evictions identified above—each orchestrated by the same Defendant and replete with the same constitutional missteps—and are well represented by their peers who continually and

demonstrably act for the benefit of their community. The represented class seeks injunctive relief under Rule 23(b)(2) because Defendant Frey's conduct and omissions regarding encampment evictions apply to the class as a whole.

### A. The Proposed Class Satisfies the Requirements of Fed. R. Civ. P. 23(a)

Rule 23(a) imposes four requirements on proposed named plaintiffs to ensure that they "are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The rules spell out four requirements, to which courts refer using the following shorthand: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id*. District courts evaluate whether the party seeking class certification has met this affirmative burden by engaging in a "rigorous analysis" of the Rule 23 requirements. *Postawko*, 910 F.3d at 1036 (citation omitted).

### 1. Numerosity

A represented class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is determined on a case-by-case basis after evaluating the facts and context. *Duffek v. iMedia Brands*, *Inc.*, No. 21-CV-01413, 2022 WL 2384171 at *2 (D. Minn. July 1, 2022). Generally, forty total putative class members are considered "numerous." *Lockwood Motors, Inc. v. Gen. Motors, Inc.*, 162 F.R.D. 569, 574 (D. Minn. 1995). The Eighth Circuit has approved a class of as few as

twenty members. *Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765-66 (8th Cir. 1971). Facts and context relevant to determining numerosity include: "the size of the class, ease of identifying its members and determining their addresses, the facility of making service on them if joined, their geographic dispersion and whether the size of the individual claims is so small as to inhibit individuals from separately pursuing their own claim." *Glenn v. Daddy Rocks*, 203 F.R.D. 425, 429 (8th Cir. 2001).

The class of individuals who have experienced at least one eviction from Nenookaasi is approximately 100 individuals. This number was calculated by reviewing estimates of the population of Nenookaasi at full capacity, which was thought to be approximately 180. Sagataw Decl., Doc. 6 ¶10; *see also* Perez Decl., Doc. 7 ¶15 (observing 160 Nenookaasi residents as of December 15, 2023); Ex. A at 148:24-149:10 (estimating approximately 150 people at the first location of Camp Nenookaasi at any given time and describing a "waterfall effect" in which as some people left the camp, more arrived to take their place). From this total, the approximately 80 individuals who were able to find and remain in housing prior to the first eviction were discounted. Perez Decl., Doc. 7 ¶15 (estimating that 76 people had been able to move from Nenookaasi into

housing as of December 15, 2023, although housing had fallen through for some of that number, who returned to Nenookaasi but continuing to seek housing); Crabtree Decl., Doc. 10 ¶5 (noting 186 residents at Nenookaasi in mid December, with 52 current residents anticipated to be housed by the end of that week and 74 others having already been helped to find housing).

Observations from witnesses to evictions corroborate this estimate. Fahlstrom Decl., Doc. 43 ¶21 (describing volunteers who support Nenookaasi residents at evictions as "moving 100 people's belongings in one day"); Johnson Second Decl., Doc. 40 ¶14 (positing that 130 people were evicted from the first Nenookaasi encampment on January 4, 2024). Numbers at subsequent evictions and testimony from Plaintiffs show that the cohort dwindled slightly but not starkly as it moved from one location to the next. Velazquez Decl., Doc. 107 ¶35 (estimating more than 70 individuals resided across 50 structures at the 5th location); Hegstrom Decl., Doc. 86 ¶7 ("I was evicted from Nenookaasi several times, and continued staying with the group.").

Identifying the remainder of the class members and determining their addresses would be extremely challenging given the repeated evictions that have taken place throughout the pendency of this lawsuit, with similar barriers to identifying class members as case workers face when attempting

to locate scattered clients who lack reliable phone or internet access. *See, e.g.*, Court Decl., Doc. 33 ¶8 ("When the mayor breaks up a camp people scatter and then supporters can't find the people they were working with. Unhoused people who are scattered by evictions … lose relationships with housing workers."); Johnson Decl., Doc. 8 ¶12 (describing how evictions, constant displacement, and lack of electronic communication make accessing services difficult for unhoused people without a long-standing encampment); Ex. B (describing the impact of repeated evictions on service providers' ability to locate clients).

The rest of the putative class members are unlikely to bring their own lawsuits, given that they are indigent and constantly experiencing displacement. Reflecting these difficulties, a few dozen individuals expressed a preliminary desire to participate in this lawsuit against the City regarding the subject matter in this complaint. *See* Letter from Non-Parties, Doc. 74. However, these individuals did not have the resources to hire legal representation nor to properly intervene or file their own lawsuits. *Id*. The undersigned attorney wrote letters and placed phone calls to every individual who provided contact information, but the vast majority of these letters were ignored or returned to sender unopened. Kelley Decl., Doc. 110 ¶¶5-7.

Numerical estimates need not be exact in order to be numerous, given the shifting nature of homelessness. *Lyall v. City of Denver*, 319 F.R.D. 558, 563 (D. Colo. 2017). Other jurisdictions have found numerosity satisfied in similar cases involving unhoused plaintiffs where exact population numbers were difficult to identify. *See, e.g.*, *Kincaid v. City of Fresno*, 244 F.R.D. 597, 607 (E.D. Cal. 2007) (approving class of forty to eight hundred unhoused people); *Love v. City of Chicago*, No. 96-C-396, 1997 WL 120041, at *6 (N.D. Ill. Mar. 11, 1997) (approving class of eighty to one hundred and twenty unhoused people).

A class of approximately 100 class members is "numerous," particularly given the challenges with their status as unhoused individuals in either being located or obtaining counsel of their own to file a separate lawsuit.

### 2. Commonality

To warrant a finding of commonality under Rule 23(a)(2), "plaintiffs must show their claims involve a common question or contention 'of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Postawko*, 910 F.3d at 1038 (quoting *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)). The most important

consideration for class litigation regarding commonality is not common questions, but actually "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

In *Postawko*, where prisoners moved to certify a class in an action that included Americans with Disabilities Act claims, and where the defendants pointed to the "unique medical condition of each member of the class," the Eighth Circuit approved the district court's finding of commonality based on the shared *constitutional* injury. 910 F.3d at 1039. "Here the physical symptoms eventually suffered by each class member may vary, but the question [of whether the defendants' policy or custom of withholding medical treatment constituted deliberate indifference] asked by each class member is susceptible to common resolution." *Id*.

Class certification is appropriate where "all members of the class are interested in a satisfactory common course of conduct in the future" even if the facts and claims vary from one individual to another. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (granting class certification for plaintiffs with distinct contract instruments, who all challenged the defendant's general practice of "over-escrowing" funds).

9

The Nenookaasi residents who experienced these evictions have common questions that are central to the case and hinge on Defendant's alleged patterns and practices of misconduct. These questions include:

1. By ordering and orchestrating evictions that result in the destruction of Plaintiffs' property without probable cause, warrants, or exigent circumstances to justify a seizure, is Defendant violating Plaintiffs' rights under the Fourth Amendment to the United States Constitution?

2. Does Defendant implement a pattern, practice, or custom of evicting Plaintiffs' encampments without effective notice, meaningful opportunities to be heard, and post-deprivation mechanisms to challenge the seizure and subsequent destruction of Plaintiffs' personal property?

3. Does Defendant's pattern, practice, and custom of evicting Plaintiffs' encampments, without notice to residents and absent safe, viable alternative living situations, and despite the obvious devastation that repeated evictions cause to unhoused people, constitute an unlawful State-Created Danger in violation of the Right to Substantive Due Process in the Fourteenth Amendment of the United States Constitution?

4. Does Defendant's pattern, practice, and custom of repeatedly evicting Nenookaasi residents from one vacant lot to another, against all manner of evidence and testimony that evictions actually worsen the problems used to justify them and inflict trauma and hardship upon an already vulnerable population, constitute  intentional infliction of emotional distress upon Plaintiffs?

5. Does Defendant's pattern, practice, and custom of evicting Plaintiffs, without first offering shelter, storage, and housing that accommodates their disabilities, constitute discrimination against people with disabilities in violation of the Americans with Disabilities Act?

Defendant's pattern, practice and custom includes: conducting evictions without input from people with disabilities on the operational guidance, not requiring contractors to identify themselves as agents of the City when notify residents of upcoming evictions, and offering no means for an encampment resident without a telephone or computer to contact the City's Homeless Response Team. Ex. A at 25, 65, 71-72.

The common questions all center not around any individual resident's fact pattern, but instead around the Defendant's pattern, policy, and/or customs, which apply equally to all members of the proposed class.

### 3. Typicality

Typicality is "easily met," as long as the claims of the other putative class members are similar to the claims of the named plaintiffs. *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citing *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977)).  Particularly in cases seeking class injunctive relief, rather than monetary damages, "the potential for minor 'factual variations' does not undermine the district court's conclusion that the

violation allegedly suffered by the named Plaintiffs is typical of that suffered by the class as a whole." *Postawko*, 910 F.3d at 1039.

The focus for "typicality" is whether the interests and goals of the representatives align with the interests of the represented class. *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006). If a representative pursuing their individual interests simultaneously advances the interests of the class, this ensures that class members will naturally have their interests represented. *General Telephone Co. of Southwest v. Falcon*, 457 U.S.147, 157 n.13 (1982).

Here, the proposed representative Plaintiffs seek an injunction on the unconstitutional, traumatic, and counter-productive pattern and custom of evicting unhoused people without notice, due process, or meaningfully accessible alternatives. The named Plaintiffs seek an injunction that would equally apply to other proposed members of the class, requesting:

> [P]reliminary and permanent injunctive relief enjoining Defendant Frey and his officials, employees, agents, officers, assigns, and all those working in concert with him from evicting encampments in East Phillips, unless and until safe, adequate, accommodative of disability, culturally appropriate, stable housing can be guaranteed and provided to all residents or unless such evictions are temporary relocations conducted in the same manner as law enforcement might clear an apartment or school in the case of an active shooter or a house fire.

Second Am. Compl., Doc. 104 at 47-48.

While exclusively shared facts are not a requirement for typicality, Plaintiffs shared experiences and identities all position them identically with respect to their claim. For example, with regards to the ADA claim, 100% of the represented class is estimated to be disabled by post traumatic stress disorder, Ex. C, 5, including the named Plaintiffs. *See* Applebee Decl., Doc. 99 at ¶3.

The requested injunction aligns with the interests of, and would equally benefit, the entirety of the proposed class.

4. <u>Adequacy</u>

A party seeking to establish a class must demonstrate that the representatives and their counsel "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). This requires a showing that "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012).

The representative Plaintiffs have made tremendous efforts—despite and amidst ongoing evictions—to stay in touch with their attorneys and provide additional guidance and information as needed. *See e.g.*, Second Barnes Decl., Doc. 37. Even should representative Plaintiffs' situations change or evolve, their

interests and efforts remain aligned with their community. Plaintiff RonDel Applebee, who experienced evictions at Nenookaasi but subsequently was able to obtain housing through Helix, for example, nonetheless has remained an advocate for the proposed class. Applebee Decl., Doc. 99 at ¶¶ 4-9. His housing placement is precarious and unsafe, so he is at risk of being back in an encampment in the near future. *Id*. at ¶ 11. Additionally, his younger cousin (and other family members) remain unsheltered and houseless in East Phillips. Askenette Decl., Doc. 96. While RonDel may have housing for himself, his continued participation reflects the cyclical nature of homelessness and his recognition not only that he may be back in an encampment at any time, but also that many of his loved ones who he stayed with at Nenookaasi remain unhoused and vulnerable to repeated evictions.

The named Plaintiffs in this lawsuit have consistently demonstrated that what drew them to Nenookaasi was the community. Sagataw Decl. Doc. 6 ¶7. Nenookaasi residents have found purpose and fulfillment in working together to achieve safety and security, health and sobriety, warmth, and a chance at a better life. Named Plaintiffs took the time to share their personal information, put their names and stories on public record for the world to see, and took the risk of trusting in court processes because they want a better life not only for themselves but for the friends and family they have built at Nenookaasi and the broader community as a whole. Sagataw Decl. Doc. 6 ¶27 ("I feel nervous about [doing

14

this declaration]. But at the end of the day, if I don't say something, I know we will continue to be pushed down in the shadows and treated like we don't exist."); King Decl. Doc. 5 ¶9 ("I'm not just thinking about myself. I'm thinking about the broader community and the neighborhood residents too.")

Plaintiffs' attorneys are similarly adequate, having shown this through competent and vigorous litigation including: amending the operative complaint twice to incorporate additional persons who came forward desiring to be plaintiffs and to reflect evolving Supreme Court precedent, Doc. 104; litigating two motions for temporary restraining orders, Doc. 4 and Doc. 31; and filing over twenty five declarations from Plaintiffs, former encampment residents, housed community members, and an expert.

Plaintiffs' attorneys are particularly suited to represent this class as individuals who understand the need to build trust over time, to employ principles of trauma-informed lawyering, and to make repeated attempts to stay connected with clients who exist in survival mode with little to no access to technology. For example, when dozens of individuals wrote to the Court seeking representation in this lawsuit, counsel wrote individual letters back to each person. Kelley Decl., Doc. 110 ¶6. When the vast majority of these letters were either returned to sender as undeliverable or simply unanswered, Attorney Kelley went in person to where these individuals might be and spent the better part of several weeks working from

15

a hot spot in encampments, visiting addresses listed on the letters, and sitting for hours with people in their tents explaining the legal process and listening to people's concerns, struggles, stories, and desired outcomes. *Id*. ¶¶7-9.

In this litigation, Plaintiffs and Plaintiffs' counsel are acting with the understanding that a positive outcome in this case for any individual Plaintiff would naturally mean a positive outcome for the proposed class, and an increase in the safety and integrity of the surrounding community at large.

   5. Ascertainability

In addition to the four subparts of Rule 23(a), some jurisdictions find that Rule 23 also contains an implicit threshold requirement of "ascertainability," which requires that the members of a proposed class be "readily identifiable." *Sandusky Wellness Ctr.,* 821 F.3d at 995 (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). The Eighth Circuit has not adopted a separate requirement of ascertainability, but has found a requirement that a class be "adequately defined and clearly ascertainable" is a component of its "rigorous analysis of the Rule 23 requirements." *Id*. (quoting *Ihrke v. N. States Power Co.*, 459 F.2d 566, 573 n. 3 (8th Cir. 1972)). In *Sandusky*, objective criteria existed to define the class: the subscribers to the fax numbers who received a fax from the defendant. *Id*. at 997. The proposed class that the *Ihrke* Court rejected, finding that the class was not ascertainable because it "would be impossible to determine because of the

vagueness of its description," was a class of "persons who because of their poverty are unable to pay for utility services." *Ihrke*, 459 F.2d at 573.

Here, the clearly contoured and limited class has an objective basis for evaluating who belongs to it: whether a person was a resident of, and experienced an eviction from, one of a limited number of encampment sites on precise days. This class would by its plain meaning not include individuals who found and remained in housing prior to the January 4, 2024 eviction. Nor would this class include persons who merely visited Nenookaasi socially, or who resided at Nenookaasi generally but were absent for the evictions themselves.

### B. The Proposed Class Satisfies the Requirements of Fed. R. Civ. P. 23(B)(2)

The representatives moving for class certification to seek injunctive relief must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This type of class certification is available "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

The standard in Rule 23(b)(2) is duplicative of the commonality and typicality analysis. "If the Rule 23(a) prerequisites have been met and injunctive or

declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *DeBoer*, 64 F.3d at 1175 (quoting 7A Charles A. Wright et al., Federal Practice and Procedure § 1772, at 470 (1986)). An incidental request for monetary damages by individual plaintiffs does not preclude class certification for injunctive relief. *See*, e.g.*, Paxton v. Union Nat. Bank*, 688 F.2d 552, 563 (8th Cir. 1982). The requested injunctive relief would provide a remedy to address the constitutional violations as applied to the entire class. Second Am. Compl., Doc. 104 at 47-48. As such, Rule 23(b)(2) applies, and injunctive class certification is warranted.

## IV.    CONCLUSION

Because the named Plaintiffs meet the prerequisites in Federal Rule 23(a) of Civil Procedure, and because the requested injunctive relief would be appropriate for the proposed class as a whole, class certification should be granted.

Respectfully submitted,

Dated: February 3, 2025

s/*Kira Kelley*
Kira Kelley (#402932)
Climate Defense Project
P.O. Box 7040
Minneapolis, MN 55407
Phone: (802) 683-4086
Email: kira@climatedefenseproject.org

*/s/Claire Nicole Glenn*
**Claire Nicole Glenn (she/her)**
Staff Attorney
Climate Defense Project
P.O. Box 7040
Minneapolis, MN 55407
651-343-4816
claire@climatedefenseproject.org
District of Columbia License No.
888242412
Maryland License No. 1902280002
Minnesota License No. 0402443

**ATTORNEYS FOR PLAINTIFFS**