UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Cheryl Sagataw, DeAnthony Barnes, Travis Neloms, Roberta Strong, Alvin Butcher, Deven Caston, Lola Hegstrom, Adrian Tiger, RonDel Applebee, and Chance Askenette, *on behalf of themselves and a class of similarly-situated individuals*,

        Plaintiffs,

v.

Mayor Jacob Frey, *in his individual and official capacity*,

        Defendant.

File No. 24-cv-1 (ECT/ECW)

**OPINION AND ORDER**

---

Kira Aakre Kelley and Claire Glenn, Climate Defense Project, Minneapolis, MN, for Plaintiffs Cheryl Sagataw, DeAnthony Barnes, Travis Neloms, Roberta Strong, Alvin Butcher, Deven Caston, Lola Hegstrom, Adrian Tiger, RonDel Applebee, and Chance Askenette.

Sharda R. Enslin, Kristin R. Sarff, Heather Passe Robertson, and J. Haynes Hansen, Minneapolis City Attorney's Office, Minneapolis, MN, for Defendant Mayor Jacob Frey.

---

      This case concerns several iterations of a homeless encampment the parties refer to as Camp Nenookaasi. Between January 1, 2024, and January 6, 2025, Camp Nenookaasi occupied nine different locations in the City of Minneapolis, each on City-owned property. ECF Nos. 107, 125; *see Sagataw v. Frey*, No. 24-cv-1 (ECT/TNL), 2024 WL 1154677, at *1 (D. Minn. Mar. 18, 2024). The City cleared and closed the camp's eighth location on November 12, 2024, and a ninth location burned down after multiple propane tanks exploded. ECF No. 125 ¶¶ 2–3. Since then, as far as the record shows, no centralized

encampment called "Camp Nenookaasi" has occupied property in Minneapolis. The City's Director of Regulatory Services testified as much, *id.* ¶ 4, and Plaintiffs' counsel agreed, Tr. (rough) at 8 ("There is not, to my knowledge, one Nenookaasi, one iteration of this encampment. Its residents are unhoused and scattered, but not in one centralized encampment in south Minneapolis.").

Plaintiffs are ten individuals who were evicted from prior iterations of Camp Nenookaasi at one time or another. ECF No. 104 at 1.[1] They seek certification of the following class under Federal Rule of Civil Procedure 23(b)(2):

> **People who, while experiencing unsheltered houselesseness [sic], found a temporary home at and experienced an eviction from Camp Nenookaasi on one or more of the following dates:**
>
> a. January 4, 2024 (evicted from 23rd Street and 13th Avenue);
>
> b. January 30, 2024 (evicted from 2601 14th Street);[2]
>
> c. February 1, 2024 (evicted from 2213 16th Avenue);
>
> d. July 25, 2024 (evicted from 2839 14th Avenue).

ECF No. 120 at 6.[3]

---

[1] Plaintiffs filed a notice of Plaintiff Deven Caston's death pursuant to Fed. R. Civ. P. 25. ECF No. 122. Plaintiffs indicated that "a motion to substitute may be forthcoming." *Id.* No substitution motion has been filed.

[2] The proposed class definition's reference to "14th Street" is a mistake. Plaintiffs intended to refer to 2601 14th Avenue South. Tr. (rough) at 13.

[3] There is some question whether all Plaintiffs would fall within their proposed class definition. The record shows that Plaintiff Tiger was present for all four evictions listed in the proposed class definition. ECF No. 94 ¶¶ 3–5, 7. Plaintiffs Barnes, Strong, and

2

On behalf of the proposed Rule 23(b)(2) class, Plaintiffs seek to enjoin Mayor Frey (and all those who would work with him) "from evicting encampments in" the East Phillips neighborhood of Minneapolis "unless and until safe, adequate, accommodative of disability, culturally appropriate, stable housing can be guaranteed and provided to all" evicted residents of an encampment "or unless such evictions are temporary relocations conducted in the same manner as law enforcement might clear an apartment or school in the case of an active shooter or a house fire." ECF No. 104 at 47–48; ECF No. 120 at 16. The East Phillips neighborhood is one of many defined neighborhoods within the City. *See Minneapolis Neighborhoods*, Open Data Minneapolis, https://opendata.minneapolismn.gov/datasets/minneapolis-neighborhoods (type "East Phillips" in the search bar; then hit "enter") (last visited July 17, 2025). At the hearing on this motion, Plaintiffs made clear that the reference to the East Phillips neighborhood in their requested injunction is intended to match the City's definition of the neighborhood. Tr. (rough) at 12. According to the City's definition, the East Phillips neighborhood's "northern boundary runs along East 24th Street from Bloomington Avenue to 17th Avenue South, then runs along East 22nd Street from 17th Avenue South to Hiawatha Avenue. Its other boundaries are Hiawatha Avenue

---

Butcher, were present for the first, second, and third evictions. *See* ECF No. 37 ¶¶ 2–4; ECF No. 39 ¶ 11; ECF No. 95 ¶¶ 6–10. Applebee was at the first and second evictions. ECF No. 99 ¶¶ 4–5. Askenette was present at the second, third, and fourth evictions. ECF No. 96 ¶¶ 7–8. Hegstrom was present at the fourth eviction. ECF No. 98 ¶ 9. No evidence shows that Sagataw or Neloms were at any of the evictions. Sagataw's only evidence is her declaration dated December 15, 2023, before the first camp closure. *See* ECF No. 6. Neloms stated that he has "been through a lot of evictions," but he did not specify whether he was evicted from any of the Camp Nenookaasi sites. ECF No. 36 ¶ 12.

3

to the east, East Lake Street to the south and Bloomington Avenue to the west." East Phillips Improvement Coalition, *The Neighborhood*, https://eastphillips-epic.com/neighborhood (last visited July 17, 2025); *Minneapolis Neighborhoods*, *supra* (showing East Phillips boundaries matching that description).[4]

Plaintiffs who wish to represent an injunctive-relief class under Rule 23(b)(2) must themselves possess standing to seek injunctive relief. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."); *John Does 1–100 v. Boyd*, 613 F. Supp. 1514, 1529 (D. Minn. 1985) (MacLaughlin, J.) (denying motion for Rule 23(b)(2) certification because the named plaintiffs lacked standing to pursue injunctive relief); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."). A plaintiff has standing to seek injunctive relief only when she faces an ongoing injury or a "real and immediate" threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05, 107 n.8 (1983). "It is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Friends of the Earth, Inc. v. Laidlaw*

---

[4] None of the four encampments in the class definition fell within the East Phillips neighborhood's official boundaries. *See Property Information Search*, Minneapolis, https://www.minneapolismn.gov/resident-services/property-housing/property-information-search (last visited July 17, 2025) (enabling property searches showing that each encampment was in the Ventura Village or Midtown Phillips neighborhoods).

4

*Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citation modified); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (noting that, to seek injunctive relief to protect against future harms, a plaintiff must show a future injury is "certainly impending"). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . ." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). And "allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation modified).

Plaintiffs have not shown that they face a real and immediate threat of future injury that the requested injunction would remedy. The injunction Plaintiffs seek is specific to encampments in the East Phillips neighborhood, but there is nothing to indicate that any Plaintiff resides in an encampment in that neighborhood. The operative Second Amended Complaint describes each Plaintiff's *past* experiences with homelessness and encampment clearings. *See* 2d Am. Compl. [ECF No. 104] ¶¶ 3–63. It alleges that only one remaining Plaintiff lived in an encampment in East Phillips when the Second Amended Complaint was filed in October 2024. *See id.* ¶ 48 (alleging that Plaintiff Chance Askenette "currently lives at an encampment in East Phillips with several family members"). An allegation that Askenette resided in an encampment in East Phillips in October 2024 says nothing regarding his living situation or whereabouts today or when Plaintiffs filed their class-certification motion. No record evidence (as distinguished from allegations in a pleading) shows that any Plaintiff currently resides in an encampment in East Phillips. The only evidence regarding Plaintiffs' circumstances are declarations filed in January and February 2024 by Plaintiffs Sagataw [ECF No. 6], Barnes [ECF Nos. 5, 37], Strong [ECF No. 39],

5

Neloms [ECF No. 36], and Tiger [ECF No. 34], but none of these declarations includes testimony that would enable one to infer that any Plaintiff resided in an East Phillips encampment when the class-certification motion was filed or at any time since. And no record evidence shows that the eviction of an East Phillips neighborhood encampment is "certainly impending." *Clapper*, 568 U.S. at 402. Without evidence showing that one or more Plaintiffs reside in an East Phillips encampment and face a "real and immediate" threat of eviction, *Lyons*, 461 U.S. at 102, it is difficult to understand how Plaintiffs might show their standing to seek relief enjoining the mayor from evicting encampments in the East Phillips neighborhood and, by extension, their ability to represent a class of similarly situated persons who would benefit from the same relief.

Plaintiffs' proposed class definition highlights the standing problem. Plaintiffs define the class by reference to four *past* Camp Nenookaasi evictions. ECF No. 120 at 6. They argue that their status as persons who experienced one or more of these past evictions gives them standing to seek prospective injunctive relief. ECF No. 127 at 7 ("The fact that Plaintiffs *were evicted* from camp Nenookaasi qualifies them to represent a class of other individuals who also experienced one or more of the same four identified evictions."). And they argue that the cyclical nature of homelessness alone—never mind Plaintiffs' actual circumstances—is enough to show Plaintiffs will experience homelessness in the future. *Id.* at 9.

I do not understand the law to support this expansive view of standing. Plaintiffs' "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea*, 414 U.S. at 495. Plaintiffs identify nothing about the

6

four past evictions' character that might show a present controversy, and that would remain true had the evictions occurred in the East Phillips neighborhood. The idea that homelessness is cyclical—here, that Plaintiffs may remain or again become homeless—does not show a present case or controversy. Assume the idea is true. Plaintiffs' requested injunction would target a specific neighborhood. On this record, whether any Plaintiff might reside in an encampment in the East Phillips neighborhood and whether Mayor Frey may order the encampment cleared while that Plaintiff is in it represent just the sort of "conjectural or hypothetical" threat of future injury that is "insufficient to confer standing." *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) (quoting *Lyons*, 461 U.S. at 101–02); *see also Proctor v. District of Columbia*, 531 F. Supp. 3d 49, 61 (D.D.C. 2021) (describing the speculative nature of homeless individuals' alleged future harms). Plaintiffs' failure to show their standing to seek injunctive relief means their class-certification motion under Rule 23(b)(2) must be denied and that their Second Amended Complaint must be dismissed without prejudice for lack of subject-matter jurisdiction to the extent it seeks injunctive and prospective declaratory relief.

## ORDER

Therefore, based on the foregoing, and all the files, records, and proceedings herein,

**IT IS ORDERED THAT**:

1. Plaintiffs' Motion for Class Certification [ECF No. 118] is **DENIED**.

2. Plaintiffs' Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 12(h)(3) for lack of subject-matter jurisdiction to the extent it seeks injunctive and prospective declaratory relief.

Dated: July 17, 2025                    s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court